State vs. Casey.

---

## No. 324.

### THE STATE OF LOUISIANA VS. BUCK CASEY.

Where a witness is asked to designate a period of time between certain events, it is a fact sought by the questioner and not the opinion of the witness.

Hypothetical questions propounded to a juror, such as his opinion on the race problem, his belief in the superiority of the white race, that negroes ought to be tried by white jurors, are irrelevant, and the answer of the witness can not affect his qualification as a juror. The test of his qualification in this particular is whether or not he has any prejudice against the defendant, and not whether he is prejudiced against his race on account of the belief he entertains of the superiority of his own race.

The defendant can not complain because a list of jurors for another week is served on him with the list of jurors who are to pass on his case.

There is no law in the State requiring that the accused shall be tried by jurors selected from among his own race.

Where there is no defect on the face of the record a motion to arrest judgment will not be sustained.

It is not necessary for a juror's competency that he should be a scholar. It is sufficient if he can understand the witnesses and the argument of counsel. The intelligence of the juror is a matter to be determined in the sound discretion of the trial judge.

It is no ground for a new trial because a witness was intoxicated and in no condition to be placed upon the stand.

When the statement of facts, prepared by request of defendant's counsel, by the trial judge, shows that the newly discovered evidence is unimportant and could not affect the result, his ruling in refusing a new trial will be sustained

APPEAL from the Ninth District Court, Parish of Red River. *Hall, J.*

J. B. *Lee* and J. R. *Land*, District Attorneys, for the State, Appellee.

J. C. *Egan & Son* for Defendant and Appellant.

The opinion of the court was delivered by

McENERY, J. Buck Casey, the defendant, a negro, was tried, convicted, and sentenced for committing the crime of manslaughter. He appealed.

There are six bills of exceptions upon which the defendant relies for a reversal of the judgment.

No. 1—A witness for the State testified that he heard a conversation between deceased and defendant, in which the deceased said: "Stop, let's shoot it out." The district attorney asked the witness the following question: "How long was it from the time deceased said 'Stop, let's shoot it out?'" which was objected to by defendant as calling for an expression of opinion from the witness. The objection was very properly overruled, as the question did not call for an opinion, but a fact, a definite period of time.

Bill No. 2—The defendant complains of the ruling of the trial judge in forcing him to trial without legal service of indictment and venire. The court convened September 5, 1892, with a jury of fifty for the first week, and of thirty for the second week, beginning on Monday, September 12. A grand jury was impaneled on the 5th of September out of the panel of fifty.

September 8 the defendant was arraigned and his case fixed for trial on the 14th of September, the second week of the term. The jury list and indictment served on the prisoner two entire days before the trial showed the jurors drawn for both the first and second weeks.

There were two separate lists, each headed with the names of the jurors drawn for the first and second weeks respectively. The accused has no cause to complain because the list of jurors on a separate list for the first week was served on him.

His trial was fixed for the 14th of September, the second week of

State vs. Casey.

the term, and the list of jurors for this week, who were to pass on his case, was served on him two clear days before the trial. 31 An. 897.

Bills 3, 4 and 6 may be considered together.

The jurors answered on their voir dire that they thought a white jury more competent to give the prisoner justice than a negro jury, and|that it was their opinion that|the country would be better off without the negro; that the colonization of the negro was desirable.·

In bill 4 it appears that the juror stated he had race prejudices, and that he thought the negro ought to be tried by a white jury.

These questions were all hypothetical and had no relation whatever to the case on trial. The jurors did not say that they had any prejudice against the accused, or that they could not give him a fair trial.

Race prejudice exists everywhere among all nations, who favor their own race and believe it is the favored and cherished race of the world. No man, because he thinks his own race superior to another, is disqualified as a juror on this account, particularly as in this case the difficulty was between two of the same race. As between them, the juror, notwithstanding his opinion of superiority of his race and people, can give an impartial verdict.

Bill No. 5—A juror was challenged because he was unable to read or write and was not familiar with the Constitution of the State and Federal Government. There is no law defining the qualifications of the juror as to intelligence. The juror in the opinion of the trial judge was fully competent and sufficiently intelligent to serve as a juror.

Questions as to the intelligence and ability of a juror to serve are within the sound discretion of the trial judge. 30 An. 884.

It is not necessary for the competency of a juror that he should be a scholar. It is sufficient if he is conversant with the English language, and can understand the testimony of witnesses and argument of counsel. State vs. Duck, 35 An. 754; State ˌvs. Ford, 42 An. 256.

There is nothing on the face of the record to justify the motion in arrest of judgment, which avers that no jurors of his own color were drawn on the venire by which he was tried. The record does not show that any juror was excluded on account of his race or color.

There is therefore no error on the face of the record upon which to base a motion in arrest of judgment. State vs. Ford, 42 An. 256.

The last complaint is to the refusal of the trial judge to grant a new trial for the reasons alleged in the several bills of exception, which have been disposed of, and that the verdict was contrary to the law and the evidence. It is alleged in the motion, on affidavit filed, that one Austin, who was not summoned for the State, but testified as a witness, stated to the jury that the defendant had stated to him directly after the killing that "prisoner had killed Sandy Carter because the prisoner would not pay deceased for a pocket-knife, and said Austin asked the prisoner if he would kill a man about a pocket knife, and prisoner answered he would."

It is stated by defendant's counsel that the testimony of Austin could be disproved by one Colbert, but he had from over-indulgence in intoxicating liquors placed himself in a condition that he could not testify.

This is not sufficient ground for a new trial. The man Colbert should have been subpœnaed, and delay asked until he was in a condition to. appear.

It appears from the statement of facts, prepared at request of defendant's counsel by the trial judge, that the contradiction of the testimony of Austin was unimportant, and could in no way affect the result of the trial.

Judgment affirmed.