No. 24,731.

THE STATE OF KANSAS, *Appellee,* v. S. J. PRATT, *Appellant.*

SYLLABUS BY THE·COURT.

1. QUALIFICATION OF JURORS—*Person of Foreign Birth—Competency Question for Trial Court.* Whether a person of foreign birth who has lived in this country many years; who speaks English with his English neighbors; understands the common English words and reads English "some", is sufficiently familiar with the English language to be a competent juror is ordinarily a question for the trial court. His decision thereon will not be disturbed unless clearly erroneous.

2. EMBEZZLEMENT—*Evidence—Proper Cross Examination of Witness.* The rule that upon cross examination the whole of a conversation may be brought out in regard to which there has been any evidence in chief does not authorize testimony concerning matters not relevant to the issues on trial, even though a part of the same conversation.

3. SAME—*Felonious Intent in Embezzlement Charges.* The felonious intent constituting in part the crime of embezzlement is the intent to take or appropriate, convert or use, the property of the principal by the agent in violation of his duties, and it is none the less embezzlement if at the time he has an intention, or hope, or desire, to restore it at a later date.

4. SAME—*Motive Prompting Embezzlement No Defense.* The motive which prompted the embezzlement is not a matter of defense.

5. SAME—*Facts Constituting Embezzlement.* When one applies money or property left in his custody to a use which he desires to make of it, it is applied to his own use.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed November 10, 1923. Affirmed.

*R. P. Evans, George Clammer,* both of Manhattan, *J. V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellant.

*Charles B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *A. M. Johnston,* of Manhattan, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: S. J. Pratt was convicted upon an information charging in one count that he embezzled $10,000 worth of government bonds which came into his possession as secretary-treasurer of the Home Building & Loan Association at Manhattan, Kansas, and in another count with having embezzled, abstracted and misapplied $4,170 deposited in the Citizens State Bank of Manhattan, Kansas, of which bank he was president. He has appealed and complains,

first, that his challenge for cause should have been sustained to one of the jurors who sat in the case. The juror, Fred Brucks, was born in Germany, was fifty-two years old, had lived in this country twenty-six years and in the county seven years. He was a farmer and lived in a part of the county remote from the county seat and usually did his trading in another county. He had heard nothing about the facts of the case, did not know the defendant, and had no bias or prejudice against him. The challenge was based solely upon his imperfect understanding of the English language. His examination disclosed that he spoke German at home and at some of the stores where he traded, but he spoke English with his English neighbors, could read English "some" and understood the common English words. To several of the questions asked him upon his examination he answered, "I can't understand" or "I don't know what that means," or gave some similar answer. In this state, while a knowledge of the English language is not made a statutory requirement for jury service, the business of the courts is conducted in the English language, and of necessity one who participates in the proceedings of the court should be sufficiently familiar with the English language that his participation in the business of the court may be done with intelligence.

A juror of foreign birth who cannot understand the language in which the business of the court is conducted is as much disqualified to serve as a juror as though he were deaf or had some other infirmity which made it impossible for him to participate intelligently in the business before the court. (*Sullenger v. The State*, 79 Tex. Cr. App. 98; *State v. Powers*, 181 Iowa, 452; *In Re Impannelling of Petit Jury*, 6 Porto Rico Fed. 685; *State v. Push*, 23 La. Ann. 14; *Fisher v. The City*, 4 Brewst. [Pa.] 395.)

But a juror, though of foreign birth, who understands the English language well enough to understand the testimony, the argument of counsel, and the instructions of the court, is not disqualified for that reason. (*Essary v. The State*, 53 Tex. Cr. App. 596; *Myers v. The State*, 77 Tex. Cr. App. 239; *Cromer v. Border's Coal Co.*, 152 Ill. App. 555; *State v. Dent et al.*, 41 La. Ann. 1082; *State v. Casey*, 44 La. Ann. 969; *State v. Duestrow*, 137 Mo. 44.)

Naturally there are instances where a juror of foreign birth has some knowledge of the English language and in such a case it has usually been held that it is for the court to decide whether he is com-

petent to comprehend all that might be said in his hearing. (*People v. Davis,* 36 Pac. [Cal.] 96; *Atlas Mining Co. v. Johnston,* 23 Mich. 36.) In this state it is the rule that the qualifications of a juror who has testified in regard thereto in court is a question of fact and a matter of judicial discretion to be determined by the court, and its decision thereon will not be disturbed on appeal unless it clearly appears that the court has made a mistake or abused its discretion. (*The State v. Molz,* 91 Kan. 901, 139 Pac. 276; *The State v. Stewart,* 85 Kan. 404; 116 Pac. 489; see, also, *Shmana v. Swift & Co.,* 113 Kan. 340, 214 Pac. 567, and cases there cited.) We think the court might have excused this juror without committing error (*The State v. Miller,* 29 Kan. 43), but the court saw this juror and had an opportunity to observe his apparent intelligence and many of his answers show comprehensive knowledge of our language. Some of his answers which indicated that he did not understand might have been from a lack of his familiarity with proceedings in court. Taking the entire record, we cannot say that the court abused its discretion, nor that the juror was disqualified as a matter of law.

On the count charging embezzlement of the bonds, the evidence showed in substance that the Building & Loan Association purchased $10,000 worth face value of the second Liberty Loan bonds of the United States, which passed into the custody of the appellant as secretary-treasurer of the association. Without any authority to do so and without the knowledge of the directors and other officers of the Association, appellant sold these bonds in January, 1920, in Kansas City. The money was not used for the benefit of the Association. In fact, appellant concealed his disposition of these bonds from the Association until some time in May or June, 1921. At two or three of the meetings of the Board of Directors of the Association held in the meantime, in which they were checking up the assets of the Association, appellant substituted other bonds which he had taken without authority from the envelopes or private boxes of depositors of the bank of which he was president, and counted those at the board meeting as the bonds of the Association. When it was discovered by the directors or officers of the Association that the bonds had been taken, appellant in several conversations admitted to various officers of the Association and to the bank commissioner that he had taken the bonds and sold them about a year and a half before. At the trial evidence of these admissions was

offered in evidence. It would seem that at the same conversations at which these admissions were made there had been talk by the appellant of making restitution by giving a mortgage upon his home, or in some other way. At the trial the court permitted the evidence of these conversations concerning the disposition of the bonds, but excluded that portion of the conversations relating to his making restitution. This is complained of, appellant contending that where a part of the conversation has been admitted in evidence it is competent for the other side upon cross-examination or re-examination to bring out the entire conversation, and in support of that he cites Wigmore on Evidence, 2d Ed., § 2115, where it was said:

"The general phrasing of the principle, then, is that when any part of an oral statement has been put in evidence by one party, the opponent may afterwards (on cross-examination or re-examination) put in the remainder of what was said on the same subject at the same time."

But the same author says, § 2113:

"In the definition of the limits of this right, there may be noted three general corollaries of the principle on which the right rests, namely, (a) no utterance irrelevant to the issue is receivable . . . This limitation is obvious enough; because the sole purpose in listening to the remainder is to obtain a correct understanding of the effect of the part first put in; and no remaining part, even if contained in the same breath or the same writing, can furnish such aid if it is wholly irrelevant to the issue."

Hence, the question really turns on whether or not statements made by appellant in these various conversations relative to making restitution for the value of the bonds taken is a matter relevant to the isue on trial.

It is well settled that a subsequent offer to return the property or the value thereof is not a defense to a charge of embezzlement (20 C. J. 455; *The State v. Chaplain,* 101 Kan. 413, 166 Pac. 238) for when one has been deprived of his property by embezzlement he is entitled to recover the same or its value in a civil action. (*Milling Co. v. Fruitiger,* 113 Kan. 432, 215 Pac. 286.) In this case the court permitted a cross-examination upon all that was said in these several conversations upon the subject of the taking of the bonds. The court did exclude what was said by appellant in these conversations concerning his making restitution upon the ground that it was not a defense and that it was not a matter relevant to the issue then being tried, and in this the court did not err.

Appellant contends that before he could be convicted of the crime of embezzlement the state must prove beyond a reasonable doubt

that at the time he wrongfully converted the bonds he had the intent to deprive the owner, not temporarily, but permanently, of its property. This question was preserved in the record in several ways, by an offer of testimony to the effect that when appellant converted the bonds he intended to replace them or their value and that he had no intention of depriving the building and loan association permanently of its property; by instructions requested, and by objections to instructions given. The court refused to permit the evidence offered and declined to give the requested instructions, but instructed the jury in substance that appellant would be guilty if, without the authority or consent of the Home Building & Loan Association he disposed of the bonds in question with the intent to convert them to his own use and with the intent to cheat and defraud the Building & Loan Association, and further instructed them, "the law presumes a criminal intent when one willfully and knowingly appropriates money rightfully in his possession belonging to another, to his private use, without the knowledge and consent of such other person; and even though at the time he does it, he intends to restore it, or does actually restore it or its equivalent, it is, nevertheless, embezzlement within the spirit, as well as the letter, of the law."

Appellant complains of the rulings of the court upon this point. A few authorities support the position of appellant, but the great weight of authority and the better reasoning support the position of the trial court. In *Morrow v. Commonwealth,* 157 Ky. 486, it was said:

"While to constitute embezzlement it is necessary that there be a criminal intent, yet where the money of the principal is knowingly used by the agent in violation of his duty, it is none the less embezzlement because at the time he intended to restore it." (Syl. ¶ 3.)

In *Fowler v. Wallace,* 131 Ind. 347, it was said:

"If there is a wilful and known wrongful taking, use, or appropriation of the employer's money by an agent, the criminality of the act is not removed by the intention to make restitution of the money." (See, also, *Russell v. State,* 112 Ark. 282; *State v. Baxter,* 89 Ohio St. 269; *State v. Lentz,* 184 Mo. 223; *Spaulding v. The People,* 172 Ill. 40; *State v. Schumacher,* 162 Iowa, 231.)

Appellant cites *In re Mutchler, Petitioner,* 55 Kan. 164, 167, 40 Pac. 283, where the court approvingly quotes the rule, "A felonious intent means to deprive the owner not temporarily but permanently of his own property." In that case the defendant hired the use of a livery team. Naturally, he had a right to use the team tempo-

rarily and thus deprive the owner of its use temporarily and the court very properly held that before he could be convicted of embezzling the team it must be shown that he intended to deprive the owner of his property not temporarily but permanently. A similar situation arose in *Conley v. State*, 69 Ark. 454. In those cases the defendant had the lawful right to the temporary use of the property, and such temporary use could not constitute a crime. Here the defendant had no right to the use of the bonds in question. He was merely custodian of them. When he sold them and used the proceeds as he pleased without the knowledge or authority of the other officers and directors of the Building & Loan Association he had embezzled the bonds. His intent to sell them and appropriate the proceeds without authority is the intent which is an element of the offense, and the fact that he may or may not have had other intentions, hopes, or aspirations, is not material.

The other count upon which appellant was found guilty grows out of the following transaction. On May 10, 1921, George Cragg took to the Citizens State Bank, of which appellant was president, $4,170 in currency which he deposited for his son, F. C. Cragg. Appellant personally received the deposit for the bank and delivered the duplicate deposit slip bearing his initials and showing a deposit on that date of $4,170 to F. C. Cragg. The money was placed in the cash drawer with other money of the bank but appellant did not give credit to F. C. Cragg for the deposit on the books of the bank. As a result, F. C. Cragg's account became overdrawn. Just how this money was entered on the books of the bank is not clearly shown. Appellant contends that he had some arrangement made several days after the date of the deposit with George Cragg by which this money could be used by appellant to take up certain "cash items" which had been presented to the bank for payment. George Cragg denies this and there is no contention that F. C. Cragg had authorized any misuse of his deposit. Appellant was charged with embezzling, abstracting, and willfully misapplying the amount of this deposit in violation of section 557 of the General Statutes of 1915. Appellant argues that the evidence was insufficient to sustain the verdict on this count. It is not necessary to make a more detailed statement of the evidence. We have examined it and find it ample to support the verdict.

Appellant offered to show that because of heavy loans made to some of its directors, the bank of which he was president was hard

pressed for funds; that the proceeds from the sale of the bonds and the F. C. Cragg deposit were used for the benefit of the bank and not for his personal use. These matters do not constitute a defense. The motive which prompted the embezzlement is not material. (20 C. J. 436.) The money was applied to the use of appellant when he used it in the way he wanted to use it, whether he chose to use it on his personal obligations or give it to the bank of which he was president, or spend it in riotous living, he directed its disposition and thereby applied it to his own use.

Finding no error in the record the judgment of the court below is affirmed.

JOHNSTON, C. J., and HOPKINS, J., not sitting.