(180 P.3d 1098)

No. 97,488

PATRICIA MCCABE, AS TRUSTEE OF THE GLADYS E. HARRIS TRUST, DATED SEPTEMBER 7, 1995, *Appellee*, v. DELPHINE M. DURAN, AS EXECUTRIX OF THE ESTATE OF RHEA L. BESS-LITTRELL, DECEASED, *Appellant*.

—

Opinion filed April 18, 2008.

*Trish Rose*, of Forker, Suter & Rose, of Hutchinson, for appellant.

*Russel B. Prophet*, Hampton & Royce, L.C., of Salina, for appellee.

Before MCANANY, P.J., ELLIOTT and LEBEN, JJ.

LEBEN, J.: Rhea Bess-Littrell served as the trustee for the Gladys E. Harris Trust for several years before Bess-Littrell's death in 2004. After her death, the successor trustee, Patricia McCabe, brought suit against Bess-Littrell's estate claiming self-dealing and mishandling of trustee obligations. A jury agreed and found that Bess-Littrell had misappropriated $20,566. After the jury verdict, McCabe asked the district court to grant double damages under K.S.A. 58a-1002(a)(3), a provision of the Kansas Uniform Trust Code. But that statute did not come into effect until January 1, 2003, and many of Bess-Littrell's acts occurred before it became effective. The district court granted double damages, but we agree with Bess-Littrell's estate that the Kansas Uniform Trust Code's double-damages provision should not be interpreted to apply to acts that took place before January 1, 2003. Statutes creating penalties usually are narrowly construed, and a broader interpretation here would violate due process.

Several provisions of the Kansas Uniform Trust Code (KUTC) must be considered. We start with the double-damages provision; it provides that "if the trustee embezzles or knowingly converts to the trustee's own use any of the personal property of the trust, the trustee shall be liable for double the value of the property so embezzled or converted." K.S.A. 58a-1002(a)(3).

In addition to that penalty provision, the KUTC expressly says that "an act done before the effective date of the act is not affected by the act." K.S.A. 58a-1106(a)(5). While that provision seems to indicate that the KUTC does not have any retroactive effect, other provisions suggest that it does. The KUTC "applies to all trusts created before, on, or after its effective date," K.S.A. 58a-1106(a)(1), and it "applies to all judicial proceedings concerning trusts commenced on or after its effective date." K.S.A. 58a-1106(a)(2). The KUTC is based on a model statute drafted by the National Conference of Commissioners on Uniform State Laws, and the comments to the model act indicate an intention to give it the broadest possible application within constitutional limits. Uniform Trust Code § 1106, 7C U.L.A. 672 Comment (2006); English, *The Kansas Uniform Trust Code*, 51 Kan. L. Rev. 311, 318 (2003). K.S.A. 58a-1106(a)(3) appears to recognize those constitutional limits because the KUTC's provisions do not apply if the court "finds that application of a particular provision . . . would substantially interfere with the . . . proceedings or prejudice the rights of the parties." And, of course, the retroactivity provisions are also limited by K.S.A. 58a-1106(a)(5), which states the KUTC doesn't apply to "an act done before the effective date."

Several cases note the broad, retroactive reach of the KUTC. See *Redmond v. Kester*, 284 Kan. 209, 217, 159 P.3d 1004 (2007); *In re Estate of Somers*, 277 Kan. 761, 765, 89 P.3d 898 (2004); *In re Harris Testamentary Trust*, 275 Kan. 946, 950-51, 69 P.3d 1109 (2003). But almost no cases discuss the implications of K.S.A. 58a-1106(a)(5). The Kansas Supreme Court cited K.S.A. 58a-1106(a)(5) in the context of evaluating a bank's actions under the prudent investor rule, noting that the KUTC could not apply to the bank's actions because they had occurred prior to the KUTC's effective date. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 435, 109

P.3d 1146 (2005). The court, however, did not address the other provisions of K.S.A. 58a-1106(a), which purport to give the KUTC a broader reach.

As a general rule, a statute operates prospectively unless its language clearly indicates the legislature intended it to operate retroactively. *Owen Lumber Co. v. Chartrand,* 276 Kan. 218, 220, 73 P.3d 753 (2003). There is an exception to this rule where the statutory change is procedural or remedial and does not prejudice a party's substantive rights. *State v. Martin,* 270 Kan. 603, 608-09, 17 P.3d 344 (2001). Because substantive laws affect vested rights, they are not subject to retroactive legislation because doing so would constitute the taking of property without due process. *Owen Lumber Co.,* 276 Kan. at 221-22. When evaluating the effect on vested rights, the Kansas Supreme Court noted the importance of " 'the degree to which the statute alters the legal incidents of a claim arising from a preenactment transaction.' " *Owen Lumber Co.,* 276 Kan. at 223 (quoting Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 711-12 [1960]). In applying the *Owen Lumber* analysis, the Kansas Court of Appeals has noted three factors to consider in determining whether retroactive legislation violates due process: (1) the nature of the rights involved; (2) how retroactive application would affect those rights; and (3) the public policy interest furthered by the legislation. *In re Care & Treatment of Hunt,* 32 Kan. App. 2d 344, 363, 82 P.3d 861, *rev. denied* 278 Kan. 845 (2004).

In this case, the district court applied K.S.A. 58a-1002(a)(3) and imposed double liability for amounts embezzled or converted by a trustee. Thus, Bess-Littrell's property interests are at stake—namely the amount of money she (now through her estate) would be liable for beyond the amount misappropriated. Retroactively applying K.S.A. 58a-1002(a)(3) would impose the double-liability penalty on actions taken when no such penalty existed. Although this provision might serve public policy interests by deterring and punishing wrongdoers, such a policy interest cannot overcome the due-process problem of retroactively applying the statute. Trustees would be subject to a penalty that was enacted well after any wrongdoing took place. Doing so would also contradict the general

rule that penal statues should be strictly construed in favor of those subject to their application. *In re Trusteeship of McDonald*, 16 Kan. App. 2d 293, 295-96, 822 P.2d 637 (1991) (declining to extend the reach of K.S.A. 59-1704—which imposes double liability to any person who converts the property of a decedent or conservatee— to a trustee who embezzles trust funds, noting that the statute is penal in nature and should be strictly construed).

McCabe argues that the KUTC was intended to apply as broadly as possible and that the restrictive language in K.S.A. 58a-1106(a)(5) ("[A]n act done before the effective date of the act is not affected by this act.") should be limited to circumstances that were previously *legal* but then made *illegal* by the KUTC. Because, McCabe argues, embezzlement and conversion were illegal before the enactment of the KUTC, Bess-Littrell's acts should be covered by the KUTC. But the issue here is not embezzlement or conversion but rather the penalty for such acts. Before the enactment of the KUTC, there was no such penalty of double liability for a trustee who wrongly converted trust funds. Although K.S.A. 59-1704 imposed a similar penalty on any person who embezzled funds from a decedent or conservatee, that provision did not apply to trustees who embezzled trust funds. *McDonald*, 16 Kan. App. 2d at 295-96. Further, none of the statutes repealed by the enactment of the KUTC imposed double liability on trustees for misappropriated funds. Accordingly, the district court erred in determining that K.S.A. 58a-1002(a)(3) was applicable to the misappropriated funds prior to the effective date of the KUTC.

At oral argument, the parties agreed that the evidence in this case would have supported the conclusion that some of Bess-Littrell's acts of misappropriation or conversion occurred before January 1, 2003, but that some also occurred after that date. The issue of double damages was not raised in the pretrial order, so neither the parties nor the district court considered asking the jury to determine what portion of the damages occurred before January 1, 2003. We find that the case should be remanded to give McCabe an opportunity to prove to a jury what part of the $20,556 in misappropriations was attributable to acts of Bess-Littrell that took

place on or after January 1, 2003. The district court may assess double damages only on those amounts.

Bess-Littrell's estate raised two other issues on appeal, both relating to the way in which these claims were initially submitted to the jury. Because the relevant damage issues must be retried, we do not find any further issue requiring our decision. The district court should have the first opportunity to address these procedural matters in connection with retrial of the damage issues.

The judgment of the district court is vacated with respect only to the assessment of double damages. That issue is remanded for further proceedings consistent with this opinion.