Nos. 113,097
113,282

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THE ALAIN ELLIS LIVING TRUST;
HARVEY D. ELLIS, JR. and NADIA M. ELLIS,
Individually and as Natural Parents,
Guardians, and Next Friends of Minor,
S.E.; and ROGER K. ELLIS,
*Appellants*,

v.

THE HARVEY D. ELLIS LIVING TRUST;
THE ESTATE OF HARVEY D. ELLIS;
EMPRISE BANK, a Kansas Banking Corporation;
and CATHLEEN A. GULLEDGE,
*Appellees,*

KANSAS UNIVERSITY ENDOWMENT ASSN., *et al.*,
*Intervenors/Appellees.*

SYLLABUS BY THE COURT

1.

Generally, the decision to permit amended pleadings to assert a claim for punitive damages is discretionary and the standard of review on appeal is abuse of discretion. But when the district court denies a party's claim for punitive damages as a matter of law, an appellate court has unlimited review of the district court's legal conclusions.

2.

In the absence of statutory authority in Kansas, a claim for punitive damages does not survive the death of the wrongdoer.

1

3.

A claim for double damages under K.S.A. 58a-1002(a)(3) against a trustee who embezzles or knowingly converts trust property to the trustee's own use is punitive in nature and does not survive the death of a malfeasant trustee.

4.

K.S.A. 58a-1004 grants the district court the authority to award attorney fees in a judicial proceeding involving the administration of a trust as justice and equity may require. The district court may order that the attorney fees be paid by another party or from the trust that is the subject of the controversy.

Appeal from Sedgwick District Court; MARK A. VINING, judge. Opinion filed November 18, 2016. Affirmed.

*Sarah E. Warner* and *Stephen R. McAllister*, of Thompson Ramsdell Qualseth & Warner, P.A., of Lawrence, for appellants.

*Lee Thompson*, of Thompson Law Firm, LLC, of Wichita, for appellees The Harvey D. Ellis Living Trust and The Estate of Harvey D. Ellis.

*Curtis L. Tideman* and *Emily R. Davis*, of Lathrop & Gage LLP, of Overland Park, for intervenors/appellees Kansas University Endowment Association, *et al*.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

MALONE, C.J.:  This is an appeal from several orders of the district court in a case involving a breach of trust by a trustee who was deceased at the time of the litigation. The appeal presents three legal issues:  (1) whether the district court erred in ruling that the double damage penalty of K.S.A. 58a-1002(a)(3) does not survive the death of a malfeasant trustee; (2) whether the district court erred in ruling that punitive damages may not be awarded against the assets of a deceased settlor's revocable trust; and (3)

2

whether the district court abused its discretion in its award of attorney fees. For the reasons stated herein, we affirm the district court's judgment on each legal issue.

FACTUAL AND PROCEDURAL BACKGROUND

This case presents a complex factual and procedural history. However, the essential facts relative to the issues we must decide on appeal are not complicated. Dr. Harvey D. Ellis (Dr. Ellis), a Wichita physician, and his wife, Alain, had two sons, Harvey D. Ellis, Jr. (Harvey, Jr.) and Roger K. Ellis. In 1992, Dr. Ellis and Alain executed two living trusts: The Alain Ellis Living Trust (Alain's Trust) and The Harvey D. Ellis Living Trust (Dr. Ellis' Trust).

Alain died on March 18, 2007. At the time of Alain's death, the principal value of her trust was $2,081,880.46. As surviving trustee of Alain's Trust, Dr. Ellis was entitled to all of the income from the trust during his life. Upon Dr. Ellis' death, the beneficiaries of Alain's Trust included Harvey, Jr., his daughter, S.E., and Roger. These beneficiaries were not aware of the existence of Alain's Trust at the time of Alain's death.

While serving as trustee of Alain's Trust, Dr. Ellis improperly converted approximately $1.5 million from that trust and deposited the funds into his own trust. During the same time period, Dr. Ellis retained a new attorney, Cathleen Gulledge, to amend his trust indenture. Dr. Ellis amended his trust at least four times, with the eventual result of naming Emprise Bank as successor trustee and removing his heirs as beneficiaries of his trust.

Dr. Ellis died on December 26, 2011. At the time of his death, the value of Dr. Ellis' Trust exceeded $10 million. The beneficiaries of the trust were charitable institutions, including The Kansas University Endowment Association, Dallas Theological Seminary, and The Navigators.

3

In January 2012, shortly after Dr. Ellis' death, Harvey, Jr. and court-appointed special trustees for both trusts initiated an investigation into improper transfers between the trusts. In February 2013, Dr. Ellis' Trust reached an agreement with Alain's Trust to transfer $1,431,143.45 back to Alain's Trust in recognition of the fact that Dr. Ellis had improperly transferred at least that amount from Alain's Trust to his trust.

On March 4, 2013, The Alain Ellis Living Trust, Harvey, Jr., independently and as next friend of his minor daughter, S.E., and Roger (plaintiffs) filed suit in the Sedgwick County District Court against numerous parties, including The Harvey D. Ellis Living Trust, Emprise Bank, and Cathleen Gulledge. The petition alleged that sometime between Alain's death in 2007 and Dr. Ellis' death in 2011, Dr. Ellis removed approximately 70 percent of the assets from Alain's Trust and deposited the funds into his own trust. The petition alleged that Dr. Ellis accomplished these illegal transfers with the assistance of his attorney, Gulledge. The petition also alleged mismanagement of Alain's Trust and wrongdoing after the death of Dr. Ellis by Emprise Bank, the successor trustee of both Alain's Trust and Dr. Ellis' Trust. Sometime after the lawsuit was filed, the charitable beneficiaries of Dr. Ellis' Trust intervened in the case to protect their interests.

During the pretrial phase of the litigation, the district court made two rulings which are now the subject of this appeal. The first ruling was the district court's grant of summary judgment in favor of Dr. Ellis' estate and trust on the issue of whether plaintiffs were entitled to recover double damages against the assets of Dr. Ellis' estate and trust pursuant to K.S.A. 58a-1002(a)(3). In reaching its decision, the district court concluded that K.S.A. 58a-1002(a)(3) is punitive in nature and that claims for punitive damages do not survive the death of a malfeasant trustee. The district court also found that the transfers made by Dr. Ellis from Alain's Trust to his own trust were not for "the trustee's own use" as defined by the statute because Dr. Ellis did not spend the money for his own needs and the funds ultimately were bequeathed to charitable institutions.

4

The second ruling was the district court's partial denial of plaintiffs' motion to amend their petition to add a claim for punitive damages. The district court allowed a claim for punitive damages against Emprise Bank and Gulledge but denied a claim for punitive damages against Dr. Ellis' estate and trust. In denying the motion as to Dr. Ellis' estate and trust, the district court ruled that plaintiffs could not assert a claim for punitive damages against the estate or trust of a deceased wrongdoer.

The case went to trial, and the jury found that plaintiffs suffered damages as a result of Dr. Ellis' breach of trust and breach of fiduciary duty and that Gulledge had committed a breach of fiduciary duty in her role as successor trustee of Alain's Trust but that Emprise Bank was free of wrongdoing. The jury further determined that after crediting the defendants for the amount of money already returned to Alain's Trust, the plaintiffs were entitled to recover $126,820.94 from Dr. Ellis' estate. Despite finding wrongdoing by Gulledge, the jury declined to award punitive damages against her.

After trial, the district court considered all of the parties' requests for attorney fees. The district court granted the requests for attorney fees to all parties to be paid by Dr. Ellis' Trust, except that Harvey, Jr.'s, claim for attorney fees in the amount of $103,000 was ordered to be paid by Alain's Trust. This appeal follows.

Plaintiffs raise three claims on appeal: (1) the district court erred in ruling that the double damage penalty of K.S.A. 58a-1002(a)(3) does not survive the death of a malfeasant trustee; (2) the district court erred in ruling that punitive damages may not be awarded against the assets of a deceased settlor's revocable trust; and (3) the district court abused its discretion in its award of attorney fees. We will consider the second issue first. This particular case involves the issue of whether punitive damages may be awarded against the assets of a deceased settlor's revocable trust. However, the broader issue is whether a general claim for punitive damages survives the death of the wrongdoer. This specific issue has not been resolved by Kansas appellate courts.

5

## DOES A GENERAL CLAIM FOR PUNITIVE DAMAGES SURVIVE THE DEATH OF THE WRONGDOER?

In denying plaintiffs' motion to amend their petition to add a claim for punitive damages against Dr. Ellis' estate and trust, the district court relied upon its prior ruling that plaintiffs were not entitled to recover double damages pursuant to K.S.A. 58a-1002(a)(3) against Dr. Ellis' estate and trust because the statutory provision is punitive in nature and claims for punitive damages do not survive the death of a malfeasant trustee. In reaching that prior decision, the district court had found that "Kansas Courts would likely follow Judge Crow's decision in *Fehrenbacher v. Quackenbush*, 759 F. Supp. 1516 (D. Kan. 1991) holding that the majority rule that a claim for punitive damages does not survive the death of the wrongdoer should be followed." The district court considered its prior ruling as "the law of the case" and adopted that ruling in denying plaintiffs' motion to recover punitive damages.

On appeal, plaintiffs argue that the district court erred when it denied their motion to amend their petition to add a claim for punitive damages against Dr. Ellis' estate and trust. Specifically, plaintiffs argue that the district court erred in finding that in Kansas a claim for punitive damages does not survive the death of the wrongdoer. Plaintiffs argue that the district court's rationale for not allowing punitive damages against Dr. Ellis' estate and trust is unsupported by Kansas law, contrary to the purpose of punitive and exemplary damages in Kansas, and bad public policy.

The Harvey D. Ellis Living Trust and The Estate of Harvey D. Ellis (defendants) argue that the district court did not err in denying plaintiffs' claim for punitive damages. Defendants argue that the district court correctly followed the majority rule that punitive damages do not survive the death of the wrongdoer. The intervenors also argue that plaintiffs' claim for punitive damages did not survive Dr. Ellis' death and that the purpose of punitive damages would not be served by punishing innocent charitable beneficiaries.

6

Generally, the decision to permit amended pleadings to assert a claim for punitive damages is discretionary and the standard of review on appeal is abuse of discretion. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999). But here, the district court ruled as a matter of law that a claim for punitive damages does not survive the death of the wrongdoer. Our review of a district court's legal conclusion is de novo. *In re Girard*, 296 Kan. 372, 376, 294 P.3d 236 (2013). To the extent that resolution of this issue requires this court to engage in statutory interpretation, such review is also unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

We begin by distinguishing the nature of punitive damages from an award for compensatory damages. An award of punitive damages is not designed to compensate the plaintiff for the tortious conduct; rather, the award is given in addition to compensatory damages and "relate[s] to the defendant's misconduct." *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1324, 136 P.3d 428 (2006). "Exemplary or punitive damages go beyond actual or compensatory damages in that they are imposed, not because of any special merit in the plaintiff's case, but to punish the wrongdoer for his willful, malicious, oppressive or unlawful acts and to deter and restrain others from similar wrongdoings." *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, Syl. ¶ 4, 507 P.2d 189 (1973).

The availability of punitive damages has long been recognized in Kansas. But in *Smith v. Printup*, 254 Kan. 315, 325, 866 P.2d 985 (1993), our Supreme Court determined that no special right to recover punitive damages existed at common law:

> "[P]unitive damages were not considered a remedy at common law, but merely incident to those causes of action in tort requesting compensatory damages. We do not regard punitive damages as compensatory in any way [citation omitted] and there is no right to punitive damages. . . . No separate right of action existed at common law for punitive damages. [Citation omitted.]" *Printup*, 254 Kan. at 325.

7

Our statutory scheme for the recovery of punitive and exemplary damages is now found at K.S.A. 60-3701 *et seq.* A plaintiff may recover punitive damages if the plaintiff proves by clear and convincing evidence that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud, or malice. K.S.A. 60-3702(c). In any civil action in which exemplary or punitive damages are recoverable, the trier of fact determines whether such damages shall be allowed. If such damages are allowed, a separate proceeding is conducted by the court to determine the amount of such damages to be awarded. K.S.A. 60-3702(a). In no case shall exemplary or punitive damages be assessed against a principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so. K.S.A. 60-3702(d)(1). Likewise, exemplary or punitive damages shall not be assessed against a partnership or corporation for the acts of a partner or shareholder unless the questioned conduct was authorized or ratified by a person expressly empowered to do so. K.S.A. 60-3702(d)(2). These provisions express a legislative intent in Kansas that punitive damages should be assessed only against the party who committed the wrong.

There is no doubt in this case that Dr. Ellis acted toward plaintiffs with willful conduct and fraud that would have supported a claim against him for punitive damages had he still been alive at the time of the litigation. However, the issue presented in this case is whether plaintiffs' claim for punitive damages survives the death of the wrongdoer. This is an issue of first impression in Kansas.

Other states are split on the issue of whether a claim for punitive damages survives the death of the wrongdoer. See Comment, *Adding Insult to Death: Why Punitive Damages Should Not Be Imposed Against a Deceased Tortfeasor's Estate in Ohio*, 49 Akron L. Rev. 553, 564-65 (2016). A majority of the states that have considered this issue have held that punitive damages do not survive the death of a wrongdoer. 49 Akron L. Rev. at 564. Fourteen states have enacted statutes prohibiting such claims, while 13 states and the District of Columbia have reached the result judicially. 49 Akron L. Rev. at

8

564. A minority of jurisdictions, on the other hand, have determined that punitive damages can survive the death of a tortfeasor. 49 Akron L. Rev. at 564. Nine states have adopted the minority view through appellate court decisions while two states have done so by legislative action. 49 Akron L. Rev. at 564.

Courts that have adopted the majority rule have reasoned that the dual purposes of imposing punitive damages are to punish wrongdoers and to deter others from committing similar bad acts. See, *e.g.*, *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 345-46, 871 P.2d 1343 (1994). Such courts have concluded that these aims are not achieved by allowing recovery against the estate of a deceased wrongdoer. 117 N.M. at 346. Also, these courts have been concerned by the fact that when punitive damages are assessed postmortem, it is the deceased's innocent estate that suffers rather than the wrongdoer. See, *e.g.*, *Crabtree v. Estate of Crabtree*, 837 N.E.2d 135, 139 (Ind. 2005).

Courts in minority jurisdictions have similarly reasoned that the primary purposes of punitive damages are to punish and deter. 49 Akron L. Rev. at 566-68. However, these courts have concluded that imposing damages against the estate of a deceased wrongdoer still has a deterrent effect. The Pennsylvania Supreme Court, for instance, concluded that "[t]he deterrent effect on the conduct of others is no more speculative in [cases where the wrongdoer is deceased] than in cases where the tortfeasor is alive." *G.J.D. by G.J.D. v. Johnson*, 552 Pa. 169, 176, 713 A.2d 1127 (1998). The court further concluded that imposing punitive damages on an estate does not necessarily punish the innocent beneficiaries because

> "[t]he heirs of the decedent tortfeasor are in essentially the same financial position as if the tortfeasor were living at the time the damages were awarded. When punitive damages are awarded against a living tortfeasor, the award reduces the amount of the tortfeasor's assets, thus reducing the amount of funds available to the tortfeasor's family and ultimately reducing the amount of the estate." 552 Pa. at 176-77.

9

While Kansas appellate courts have not considered the survivability of punitive damages, the issue has been considered by a federal court interpreting and applying Kansas law. In *Quackenbush*, the district court determined that "Kansas courts would follow the majority rule and not allow an award of punitive damages against the estate of the wrongdoer." 759 F. Supp. at 1521. The court noted that the dual justifications for imposing punitive damages in Kansas are to punish wrongdoers and to deter others from committing similar bad acts. 759 F. Supp. at 1521. The court concluded that "[a]warding punitive damages would vicariously punish the heirs of the wrongdoer and would not serve to deter potential tortfeasors." 759 F. Supp. at 1521-22.

Moreover, in *Koch*, our Supreme Court held that a "surety on an official bond can be required to respond only for actual or compensatory damages and is not liable for punitive or exemplary damages in the absence of an express statutory provision therefor." 211 Kan. 397, Syl. ¶ 5. The court reasoned that the payment of exemplary or punitive damages should rest ultimately on the party who committed the wrong:

> "Where exemplary damages are awarded for purposes of punishment and deterrence, as is true in this state, public policy should require that payment rest ultimately as well as nominally on the party who committed the wrong; otherwise they would often serve no useful purpose. The objective to be attained in imposing punitive damages is to make the culprit feel the pecuniary punch, not his guiltless guarantor." 211 Kan. at 405.

Finally, in *Printup*, our Supreme Court addressed whether punitive damages are recoverable in a wrongful death action in Kansas. In that case, the court engaged in an extensive discussion of the nature of punitive damages, both as to their existence in the common law and in Kansas statutory law. The court initially determined that punitive damages are different from compensatory damages and that a claim for punitive damages is not a "cause of action" separate and distinct from a claim for compensatory damages. 254 Kan. at 322. For that reason, the court determined that punitive damages were not considered a remedy at common law, but merely incident to those causes of action in tort

10

requesting compensatory damages. 254 Kan. at 325. The court determined that a plaintiff does not have a right to recover punitive damages and because no such right exists, "the legislature could, without infringing upon a plaintiff's basic constitutional rights, abolish punitive damages." 254 Kan. at 326. The court concluded that in the absence of an express provision in the wrongful death statute authorizing punitive damages, punitive damages are not recoverable in a wrongful death action in Kansas. 254 Kan. at 335.

Our Supreme Court's decision in *Printup* addressed whether punitive damages are recoverable by the heirs of a deceased victim in a wrongful death action; the case herein presents the converse issue: whether a claim for punitive damages survives the death of the wrongdoer. We must turn to the Kansas statute on the survival of actions for guidance on how to resolve this issue. The Kansas survival statute, K.S.A. 60-1801, states:

> "In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

The Kansas survival statute does not expressly address the subject of punitive damages. The statute speaks in terms of the survival of "causes of action." As the defendants point out, our Supreme Court has expressly stated that a claim for punitive damages is not a "cause of action" separate and distinct from a claim for compensatory damages. *Printup*, 254 Kan. at 322. Moreover, the *Printup* court determined that punitive damages were not considered a remedy at common law. 254 Kan. at 325. The court made it clear that the recovery of punitive damages is governed by statute and that the legislature could abolish punitive damages if it saw fit to do so. 254 Kan. at 326.

We note that in some states, the minority rule that a claim for punitive damages can survive the death of a tortfeasor has been adopted by legislative action. For instance,

11

Oklahoma has a survival statute similar to the Kansas survival statute. See Okla. Stat. Ann. tit. 12, § 1051 (West 2014). However, in addition to its survival statute, the Oklahoma Legislature has enacted a separate statute that expressly provides that a claim for punitive damages survives the death of a tortfeasor. See Okla. Stat. Ann. tit. 12, § 1053(C) (West 2014) ("In proper cases, as provided by Section 9.1 of Title 23 of the Oklahoma Statutes, punitive or exemplary damages may also be recovered against the person proximately causing the wrongful death *or the person's representative if such person is deceased.*" [Emphasis added.]).

Based on the law discussed herein, we conclude that in the absence of statutory authority in Kansas, a claim for punitive damages does not survive the death of the wrongdoer. We reach this conclusion based, in part, on the fact that this result is in line with the majority of courts that have addressed this issue. However, we emphasize that our conclusion is not based on public policy. Rather, it is based on the fact that the recovery of punitive damages was not a right at common law in Kansas and, although we now have a statutory scheme that allows for the recovery of punitive damages, there is nothing in that statutory scheme or in our survival statute, K.S.A. 60-1801, that expressly allows a claim for punitive damages to survive the death of the wrongdoer.

The Kansas Legislature is the branch of government charged with the development of public policy. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 348, 277 P.3d 1062 (2012). If the Kansas Legislature, like the Oklahoma Legislature, sees fit to allow a claim for punitive damages to survive the death of the wrongdoer, then it can enact a statute that clearly provides for such recovery. In the absence of such a statute, however, we find that no such recovery is allowed in Kansas. For these reasons, we conclude that the district court did not err in denying plaintiffs' claim for punitive damages against Dr. Ellis' estate and trust.

## DOES THE DOUBLE DAMAGE PENALTY OF K.S.A. 58a-1002(a)(3) SURVIVE THE DEATH OF A MALFEASANT TRUSTEE?

Plaintiffs' claims in district court against Dr. Ellis' estate and trust included a claim for double damages pursuant to K.S.A. 58a-1002(a)(3). K.S.A. 58a-1002 defines the measure of damages for a breach of trust by the trustee and provides in part:

> "(a) A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of:
> (1) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred;
> (2) the profit the trustee made by reason of the breach; or
> (3) if the trustee embezzles or knowingly converts to the trustee's own use any of the personal property of the trust, the trustee shall be liable for double the value of the property so embezzled or converted."

Prior to trial, the district court granted a motion for partial summary judgment in favor of Dr. Ellis' estate and trust on the issue of whether plaintiffs were entitled to recover double damages pursuant to K.S.A. 58a-1002(a)(3). In reaching its decision, the district court concluded that K.S.A. 58a-1002(a)(3) is punitive in nature and that claims for punitive damages do not survive the death of a malfeasant trustee. The district court also found that the transfers made by Dr. Ellis from Alain's Trust to his own trust were not for "the trustee's own use" because Dr. Ellis did not spend the money for his own needs and the funds ultimately were bequeathed to charitable beneficiaries.

On appeal, plaintiffs argue that the district court erred when it refused to allow them to pursue double damages against Dr. Ellis' estate and trust pursuant to K.S.A. 58a-1002(a)(3). Plaintiffs argue that the district court's refusal to apply the statute's plain language, while instead injecting a judicially concocted "policy" exception, is contrary to Kansas law. Plaintiffs also argue that the district court erred in finding that the transfers made by Dr. Ellis from Alain's Trust to his own trust were not for his own use.

13

Defendants argue that the district court correctly ruled that plaintiffs were not entitled to recover double damages under K.S.A. 58a-1002(a)(3). Defendants argue that the double damage provision of the statute is punitive in nature and does not survive the death of the malfeasant trustee. Defendants also argue that the transfers made by Dr. Ellis from Alain's Trust to his own trust were not for his own use. The intervenors join in the arguments made by defendants.

On appeal of a motion for summary judgment where, as here, there are only questions of law to be resolved, this court reviews the district court's grant of summary judgment de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). Moreover, to the extent that resolution of this issue requires this court to engage in statutory interpretation, such review is also unlimited. *Westar Energy Inc.*, 301 Kan. at 918.

We will first address the district court's finding that the transfers made by Dr. Ellis from Alain's Trust to his own trust were not for his own use. K.S.A. 58a-1002(a)(3) authorizes double damages for a breach of trust if the trustee embezzles or knowingly converts personal property of the trust "to the trustee's own use." Defendants argue that the district court correctly found that Dr. Ellis did not convert funds from Alain's Trust to his own use because he merely removed funds from her trust and put them in his own trust where they remained untouched at the time of his death and ultimately were bequeathed to charitable beneficiaries.

Despite defendants' attempts to argue otherwise, the fact that Dr. Ellis did not spend the money he converted before he died does not mean that he did not take it for his own use. Kansas courts have long recognized that "[w]hen one applies money or property left in his custody to a use which he desires to make of it, it is applied to his own use." *Bolton v. Souter*, 19 Kan. App. 2d 384, 387, 872 P.2d 758 (1993) (quoting *State v. Doolittle*, 153 Kan. 608, 611, 113 P.2d 94 [1941]); see also *State v. Pratt*, 114 Kan. 660, Syl. ¶ 5, 220 Pac. 505 (1923). As the *Pratt* court succinctly and practically explained:

14

"The money was applied to the use of appellant, when he used it in the way he wanted to use it. Whether he chose to use it on his personal obligations, or give it to the bank of which he was president, or spend it on riotous living, he directed its disposition, and thereby applied it to his own use." 114 Kan. at 666.

Here, Dr. Ellis took property out of Alain's Trust and put it in his own trust. While his precise reason for doing so will never be known, it is clear that he took property that was meant to benefit plaintiffs and converted it to his own use. The fact that Dr. Ellis put the property he had taken into a trust that, after his death, passed to charitable institutions does not insulate him from a finding that he converted the property first for his own use. Dr. Ellis' actions would have subjected him to the double damages of K.S.A. 58a-1002(a)(3) had he been alive during this litigation.

This brings us to the district court's ruling that K.S.A. 58a-1002(a)(3) is punitive in nature and that claims for punitive damages do not survive the death of a malfeasant trustee. We must first consider the district court's premise that the double damage provision of K.S.A. 58a-1002(a)(3) is punitive in nature as opposed to compensatory. As we previously have discussed, compensatory or actual damages are damages that "are awarded to make good or to replace loss caused by a wrong or injury; they are confined to compensating for injuries sustained." *Koch*, 211 Kan. at 401. Punitive damages, on the other hand, may be imposed in amounts in excess of what is necessary to fully compensate a party for losses or damages the party suffered. 211 Kan. at 401. These damages are awarded to punish the defendant for his or her purposeful bad acts, "not because of any special merit in the plaintiff's case." 211 Kan. 397, Syl. ¶ 4.

The plain language of K.S.A. 58a-1002(a)(3) leads us to conclude that the double damage provision is punitive. K.S.A. 58a-1002(a)(1) and (2) apply to any trustee who commits a breach of trust. K.S.A. 58a-1002(a)(3), on the other hand, applies only when a trustee has embezzled or knowingly converted trust property. Additionally, while K.S.A.

58a-1002(a)(1) and (2) grant damages in an amount that is meant to compensation trust beneficiaries for their loss, the double damages in K.S.A. 58a-1002(a)(3) are not awarded based on actual loss but rather result in an award that is greater than necessary to replace the loss caused by the trustee's conduct.

Also, Kansas courts have determined that language similar to the double damage provision of K.S.A. 58a-1002(a)(3) is more punitive in nature than remedial. In *Koch*, our Supreme Court construed K.S.A. 59-1704, which has language almost identical to the language in K.S.A. 58a-1002(a)(3), and found the provision to be punitive in nature. 211 Kan. at 401-03. The court also reviewed law from other jurisdictions and determined that most states considering similar statutes find them to be "penal in character, not compensatory." 211 Kan. at 403. Since *Koch*, Kansas courts have consistently construed the double damage remedy of the probate code as a civil penalty intended to punish the wrongdoer. See *In re Conservatorship of Marcotte*, 243 Kan. 190, 195, 756 P.2d 1091 (1988); *Bolton*, 19 Kan. App. 2d at 388; see also English, *The Kansas Uniform Trust Code,* 51 U. Kan. L. Rev. 311, 342 (Feb. 2003) (describing double damage provision as an "additional penalty" against trustee who embezzles or unlawfully converts trust property).

In *McCabe v. Duran*, 39 Kan. App. 2d 450, 180 P.3d 1098 (2008), this court considered whether K.S.A. 58a-1002(a)(3) could be applied retroactively. There, the court concluded that K.S.A. 58a-1002(a)(3) could not be applied retroactively because it is a penal statute and imposing a penalty on actions that were not subject to such penalty at the time they were taken would violate the defendant's due process rights. 39 Kan. App. 2d at 452-54. Plaintiffs point out that the issue in *McCabe* involved a claim against a trustee who already had passed away and argue that the case supports their claim that the double damage provision survives the death of the trustee. However, as defendants point out, the issue of whether the penalty provision of K.S.A. 58a-1002(a)(3) survived the trustee's death was not discussed, decided, or even referenced in the opinion.

16

In sum, the major premise of the district court's ruling, that the double damage provision of K.S.A. 58a-1002(a)(3) is penal in nature rather than compensatory, is in accord with every applicable Kansas precedent. Based on this premise, we agree with the district court's conclusion that plaintiffs' claim for double damages under K.S.A. 58a-1002(a)(3) does not survive the death of a malfeasant trustee. As discussed earlier in this opinion, this conclusion is not based on public policy; rather, it is based on the absence of any statutory authority that a claim for double damages against a trustee who embezzles or knowingly converts trust property to the trustee's own use should survive the death of the trustee. If our legislature wants to accomplish this result, it could easily amend K.S.A. 58a-1002(a)(3) to allow for the recovery of double damages against the trustee *or the trustee's estate*. Accordingly, we conclude that the district court did not err in granting summary judgment in favor of Dr. Ellis' estate and trust on the issue of double damages.

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN ITS AWARD OF ATTORNEY FEES?

Finally, plaintiffs argue that the district court erred when it ordered a portion of their claimed attorney fees to be paid by Alain's Trust. K.S.A. 58a-1004 grants the district court the authority to award attorney fees in a "judicial proceeding involving the administration of a trust . . . as justice and equity may require." The district court may order that the attorney fees be paid "by another party or from the trust that is the subject of the controversy." K.S.A. 58a-1004.

Where a statute vests a district court with the authority to award attorney fees as the district court sees fit, such award is reviewed for an abuse of discretion. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). A district court abuses its discretion if (1) it acts arbitrarily, fancifully, or unreasonably; (2) its decision is based on an error of law; or (3) its decision is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

17

Here, the district court ordered Dr. Ellis' Trust to pay all of the attorney fees accumulated by plaintiffs' retained attorneys. In addition to fees for retained attorneys, Harvey, Jr., an attorney himself, requested $103,000 in attorney fees for time he spent investigating Dr. Ellis' embezzlement. The district court granted Harvey, Jr.'s, request for attorney fees but ordered that the fees be paid by Alain's Trust. Plaintiffs contend that the district court should have ordered Harvey, Jr.'s, fees to be paid by Dr. Ellis' Trust.

K.S.A. 58a-1004 allows the district court to award costs to any party to be paid either by another party or with funds from the trust that is the subject of the underlying litigation. Where beneficiaries of a trust incur costs in an action that benefits the trust, beneficiaries are permitted to be reimbursed for such costs out of trust funds. See *Jennings v. Murdock*, 220 Kan. 182, 215, 553 P.2d 846 (1976); *Moore v. Adkins*, 2 Kan. App. 2d 139, 151, 576 P.2d 245 (1978). That is exactly what happened here. The district court determined that the expenses Harvey, Jr., incurred during his early work investigating the embezzlement of funds from Alain's Trust should be reimbursed by that trust because his work benefited the beneficiaries of that trust. Although the district court could have ordered that Harvey, Jr.'s, attorney fees be paid by Dr. Ellis' Trust, it did not abuse its discretion when it ordered Alain's Trust to pay these fees.

Affirmed.