Elizabeth Cromer, Administratrix, Appellee, v. Borders Coal Company, Appellant.

1. JURORS—*what does not disqualify.* A juror is not required to be able to read and write the English language; if he "understands" the English language he is qualified.

2. JURORS—*when overruling challenge for cause will not reverse.* Unless an objectionable juror is forced upon a plaintiff, a failure to sustain a proper challenge for cause will not reverse.

3. MASTER AND SERVANT—*obligation to furnish safe place to work.* It is a positive duty of the master to exercise reasonable care to furnish to the servant and to maintain a reasonably safe place to work and the servant has a right to assume that such duty has been performed; if the place becomes dangerous and the servant knows of such danger he is justified in continuing in the service of his master for a reasonable time after a promise to repair the defect has been made.

4. INSTRUCTIONS—*when upon right of recovery not erroneous as ignoring defense of assumed risk.* The doctrine of assumed risk having been submitted to the jury in their instructions, an instruction in form as follows, is not erroneous.

"If you find from the evidence in the case that the plaintiff has made out her case, as set forth and alleged in her declaration by a preponderance of the evidence, then you should find for the plaintiff and against the defendant company."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed February 11, 1910.

SCHAEFER, FARMER & KRUGER, for appellant.

WEBB & WEBB, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Elizabeth Cromer, the administratrix and wife of

Charles Cromer, deceased, brought this suit to recover damages under the statute for the death of her husband, alleged to have been caused by the negligence of appellant. There have been two trials of this cause, upon the first of which a verdict of $1,500 in favor of appellee was set aside by the court and a new trial granted, and upon the second a verdict for appellee in the amount of $7,500 was sustained by the court and judgment entered for that amount.

The proofs show, that on April 18, 1907, Charles Cromer, 53 years of age, was working as a driver in the coal mines of appellant at Marissa, Illinois, where he had been engaged for some eight or nine years. Two tracks extended north from the bottom of the shaft, the east one, known as the load track, running back for some distance into the mine. The west one, which was used for empty cars, ran parallel with, and five or six feet distant from the load track and extended north about 125 feet, where it connected with the load track by a switch. About 14 feet north of this switch there was another switch from the east track, leading into what was known as the first east entry. Some 80 to 90 feet from the bottom of the shaft, the load track was raised about 18 inches and from this point, called the knuckle, the track sloped down in both directions. Upon this knuckle, or elevation of the track, it was the custom of the drivers to unhitch the mules and the cars would then run to the bottom of the shaft by the force of gravity. The hard pull necessary to draw the cars up on the level of the knuckle, had a tendency to make the mules dig out the dirt between the ties with their feet.

Cromer on the day in question, was driving a mule which had not been used very long, was hard to control and not well broken. Between 8 and 9 o'clock in the morning of that day he brought in a trip of two loaded cars, which he deposited on the load track between the knuckle and the bottom of the shaft, and was waiting for empties. His mule refused to stand and Cromer started to drive him up on the knuckle, but as the mule

refused to start readily, he struck him with a piece of pick handle. The mule then went up on the knuckle and to make him stand, deceased hitched him to the back end of one of the loaded cars with his head towards the north. The mule, however, would not stand still and started down the decline towards the switch with the loaded car. The lines used for driving the mule were attached to the spreader near the tail chain. Cromer ran after the mule and in attempting to reach the lines to stop him stepped in between the mule and the car. At a point somewhere between the two switches, he fell on the track and the loaded car ran upon and crushed him so that later, on the same day, he died.

Appellee claims that Cromer stumbled and fell by reason of his stepping into a hole in the track between the ties said to be from 4 to 10 inches deep. On the morning of the day previous to his injury, Cromer complained to the mine boss of the condition of the track at that place, telling him it was full of holes and dangerous and stating if it was not fixed up, he was going to quit driving over it. The mine boss promised to fix the track and told Cromer not to quit driving.

Appellant urges as reasons why this judgment should be reversed, that the court erred in overruling appellant's challenge for cause, to a juror, that the verdict was not sustained by the evidence and that improper instructions were given on behalf of appellee. Appellant challenged the juror referred to on the ground that he could not read or write, and therefore did not come within the requirement of section 2 chapter 78 of Revised Statutes, that jurors shall be free from all legal exceptions. Ability to read and write the English language, however desirable, is not one of the requirements of the statute for the qualifications of a juror. The statute does require that the juror shall "understand the English language," and the juror in question testified that he did. Moreover, at the time this juror was challenged for cause, appellant had not exhausted his peremptory chal-

lenges, was not compelled to take the juror objected to, and, as a matter of fact, excused him peremptorily. The record also fails to show that any objectionable juror was forced upon appellant after he had exhausted his peremptory challenges, and therefore he cannot be heard here to complain. Graff v. The People, 208 Ill. 317; Spies v. The People, 122 Ill. 1 (258).

In regard to the facts, appellant contends that the proof did not show that defendant was guilty of the negligence charged, that it did show that Cromer was guilty of contributory negligence, that there was no evidence that the alleged defect in the track was the proximate cause of the injury and that under the facts in the case Cromer must be held to have assumed the risk of injury.

We are of opinion the preponderance of the evidence in this case established that appellant was guilty of negligence in knowingly maintaining the unsafe conditions which existed at the place where the injury occurred; that the actions of Cromer at the time and under all the circumstances, were not such as to constitute contributory negligence and that the unsafe and dangerous condition of the track was the proximate cause of the injury.

A more difficult question, and the one upon which appellant places great reliance, is that of assumed risk. Cromer knew of the condition of the track and that it was dangerous to the employes of the company, especially to those going over it so often as the mule drivers. So fully was this impressed upon his mind that he notified appellant's mine manager on the day before the injury, that it was dangerous to drive over it and that he was likely to be injured if the ties were not covered. He also threatened to quit driving over the track unless the dangers were removed, but continued with his work when the mine manager promised to fix the track and told him not to quit. Appellant argues that the work he was engaged in and the surroundings were plain, simple and easy to understand and seeks to apply the rule of law which makes

a difference in regard to assumed risk between the continued use of complicated machinery and of that which is simple and readily understood, and cites authorities to sustain the theory that in the latter case the workman, as a rule, assumes the hazards. This, however, differs from those cases, as it does not concern the use of simple or complicated machinery, but involves the question of providing and maintaining a reasonably safe place for the employe to work in.

In Armour v. Golkowska, 202 Ill. 144, it is said: "On entering the service of the appellants, the appellee had the right to assume that the place provided by them in which she was to do their work, was reasonably safe and that they would exercise reasonable care to maintain that condition of safety. (Nat'l. Syrup Co. v. Carlson, 155 Ill. 210; Ross v. Shanley, 185 id. 390.) The duty which the master owes to his servant to provide a reasonably safe place wherein the servant is to work, is a positive duty devolving upon the master and is not one of the perils or risks assumed by the servant."

In Republic Iron & Steel Co. v. Lee, 126 Ill. App. 297, Mr. Justice Farmer, speaking for the court, said: "The duty of the master to provide a reasonably safe place for his servant to work is a positive one, and non-compliance with this duty is not one of the ordinary risks assumed by the servant."

Assuming, as it must be done under the law, that it was the primary duty of appellant to provide Cromer with a reasonably safe place in which to work, the further question arises, was it absolved from that duty by the fact that Cromer knew the dangers? Cromer only continued in the service at the request of appellant's manager or pit boss, under a promise to repair, and appellant invokes the rule, that if a promise to repair is made without fixing the time within which the repairs shall be made, the servant may continue his work for a reasonable time under the circumstances, within which such repairs could or ought to be made and after the expiration of such reasonable

time to make repairs, if, the same are not made and the defects are open and known to the servant, and no new promise to repair is made and the servant continues the work, he assumes the risks incident to the defects of which he complained. Gunning System v. LaPointe, 212 Ill. 274.

In this case the defects were easy to rectify and the repairs could have been apparently made at small expense for labor and material. It was a trifling affair for the mining company. On the other hand Cromer had either to submit himself to the existing dangers or abandon his employment, with consequent loss of livelihood. The conditions therefore which confronted the two parties were immensely different. It would be an extremely harsh rule which would hold that under these conditions appellant, which could have readily made the repairs in a few hours, should in case it failed to do so, be thereafter absolved from all liability, and Cromer who had no power to remedy the dangerous conditions, must if he continued his employment, assume the hazards caused by appellant's neglect to make said repairs. This would allow appellant, in effect, to take advantage of its own neglect of duty and would be so manifestly unjust that the question as what should be a reasonable time within which, under the circumstances, Cromer could have continued in his position, without assuming the risk, should receive a most liberal construction. This question under the facts in this case, was one for the jury to determine under the instructions of the court, and under the proofs we are not at liberty or disposed to disturb their verdict.

Appellant complains of two of the instructions given for appellee. One of these instructions told the jury, "If you find from the evidence in the case that the plaintiff has made out her case, as set forth and alleged in her declaration by a preponderance of the evidence, then you should find for the plaintiff and against the defendant company." This instruction has been approved many times by our Supreme Court.

Chicago City Ry. Co. v. Carroll, 206 Ill. 318, and cases there cited. But the objection is made that it is erroneous in this case, for the reason that it does not take into account the defense of assumed risk. Another instruction, however, given on behalf of appellee, which was not general in form, but applied directly to the facts in the case, gave appellant, in effect, the benefit of that defense and an instruction was also given for appellant upon the question of assumed risk. As the instructions on both sides of the case raised the question of assumed risk, we are of opinion that the giving of the instruction objected to was not reversible error.

The other instruction complained of by appellant informed the jury, that if Cromer told appellant's pit boss of the condition of the track, stating his fear of injury therefrom, and the pit boss promised he would repair the same and ordered and directed Cromer to continue in the discharge of his duties on such track until such repairs could be made, then said Cromer was justified in continuing in his work on said track for a reasonable time thereafter unless the danger incident to the work was so imminent that an ordinarily prudent and careful person, exercising due and ordinary care for his own safety, would refuse to continue at such work. The objection to the instruction is that it justified Cromer in continuing his work "for a reasonable time thereafter," no definite time being fixed and that it should have provided only for the continuation of such work without assuming the risk for "such time as would be reasonably sufficient for the master to fulfill his promise."

In view of what we have above said in our discussion of the facts as applicable to the question of assumed risk, we are of opinion there was no error in giving this instruction to the jury in the form in which it was submitted to them. We find no error in the record in this case, which calls for a reversal of the judgment and the same is therefore affirmed.

*Affirmed.*