No. 122,482

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the
O.E. BRADLEY AND E.L. BRADLEY TRUST.

SYLLABUS BY THE COURT

1.

The decision to remove a trustee for a breach of the trust under K.S.A. 58a-706(b) lies within the sound discretion of the district court. When considering whether a district court abused its discretion, we do not look to see whether another decision would have also been reasonable. We merely ask whether a reasonable person could agree with the decision that the district court made.

2.

Among the statutory duties of a trustee are the duties to take reasonable steps to take control of and protect the trust property; to keep adequate records for the administration of the trust; to keep the trust property separate from the trustee's own property; and to keep the beneficiaries reasonably informed about the administration of the trust and of material facts necessary for them to protect their interest in the trust.

3.

A decision to remove a trustee is designed to protect the trust rather than punish the trustee.

4.

K.S.A. 58a-1002(a)(3) authorizes double damages for a breach of trust if the trustee embezzles or knowingly converts personal property of the trust "to the trustee's

1

own use." This provision is similar in nature and purpose to punitive damages which are based on the premise that the defendant deserves punishment for malicious, vindictive, or willfully and wantonly invasive conduct.

5.

When the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation reasonable under the circumstances. K.S.A. 58a-708(a). Regardless of the terms of a trust, the district court has the power to adjust unreasonably high or low trustee fees. K.S.A. 58a-105(b)(7).

6.

In trust adjudication, a district court may award attorney fees to any party and has wide discretion to determine the amount and recipient of attorney fees.

7.

In trust adjudication, an award of attorney fees and expenses is reasonable if the litigation proved beneficial to the trust estate. As a general rule, legal proceedings benefit a trust estate if questions are resolved so the estate can be properly administered.

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed May 7, 2021. Affirmed.

*Mark G. Ayesh* and *David M. Hahn*, of Ayesh Law Offices, of Wichita, for appellant Casey Galloway.

*Patrick A. Edwards* and *John A. Vetter*, of Stinson LLP, of Wichita, for appellee O.E. Bradley and E.L. Bradley Trust.

Before HILL, P.J., GARDNER, J., and BURGESS, S.J.

2

GARDNER, J.:  Casey Galloway, a beneficiary of the O.E. Bradley and E.L. Bradley Trust, appeals the district court's denial of his requests to remove Mike and Wilbur Bradley (co-trustees) as trustees and to assess double damages against them for loss caused by a loan the Trust made to a third party (Dan Holladay) that was not repaid. Galloway also asserts that the district court erred by allowing the co-trustees to take $24,000 a year in trustee fees and to have the Trust pay their attorney fees in this case. And although the district court also awarded Galloway some attorney fees to be paid by the Trust, Galloway contends that the district court erred by limiting his award to the costs he incurred before the case went to trial. Having reviewed the record, we find no error and affirm.

*Basic Overview of the Trust*

Several decades ago, brothers Orval Bradley (O.E.) and Everett L. Bradley (E.L.) were involved in the oil and gas industry and bought mineral interests in various properties. In 1968, they assigned those interests to an irrevocable trust and designated two of their children as beneficiaries. The agreement granted exclusive control over the Trust and its management to the designated co-trustees—Wilbur and David Bradley— O.E. and E.L.'s sons. Wilbur continues to serve as a trustee. David did so until his death, then Richard Bradley served as a trustee until he resigned in 1993. After that, Wilbur's son—Mike Bradley—served as a trustee for around 25 years. Mike was serving as a co-trustee when this case began but his death in June 2020 left Wilbur as the only remaining trustee. Still, we collectively refer to Wilbur and Mike as "co-trustees."

The Trust has 14 beneficiaries, each holding varying interests. The Trust assets include 108 producing and non-producing mineral interests, stocks, bonds, and other money.

3

*Initiation of This Case*

On the day that O.E. died in 1982, Casey Galloway—O.E.'s grandson and Wilbur's nephew—asked Wilbur's secretary to give him copies of the Trust's financial records. Wilbur did not believe that Galloway was entitled to the information because he was not a beneficiary to the Trust, so Wilbur refused to give Galloway the requested information.

After his mother died in 2012, Galloway became a beneficiary of the Trust. At that time, Wilbur wrote Galloway a letter notifying him of his interest in the Trust, but he did not enclose a copy of the trust agreement. Wilbur's letter told Galloway that the Trust was "set up so that only the income for each year [was] to be distributed to the beneficiaries[;] [t]he trust corpus [could not] be distributed at any time." Galloway requested no other information about the Trust for the next several years, instead accepting his annual trust payments without objection. Galloway also received an annual K-1 tax form which accounted for Galloway's individual interest in the amount of the income the Trust earned during that year. But he received no other financial information from the co-trustees that could account for the Trust's assets or liabilities until 2018.

In 2018, Galloway demanded that the co-trustees produce a copy of the Trust and a record of its accounting. The co-trustees complied. By reviewing the documents, Galloway learned that the co-trustees had provided none of the beneficiaries with any financial information other than their respective K-1 forms. Based on information gleaned from the financial records, Galloway sued to remove the co-trustees and to require them to repay any funds improperly loaned from the Trust.

Galloway alleged the co-trustees failed to give beneficiaries adequate accounting, breaching the Trust agreement's requirement that they send the beneficiaries a yearly statement showing how they invested trust funds and listing the transactions the Trust made the year before.

4

Galloway also argued that the co-trustees had authorized the Trust to make several self-serving and unsecured loans to themselves and their closely held companies:

- $89,000 in October 2011 to Mike as a personal mortgage on his residence;
- $40,000 in September 2015 to White Pine Petroleum Corporation (White Pine), a company in which Wilbur was president and Mike was treasurer;
- $30,000 in November 2015 to White Pine;
- $20,000 in February 2017 to White Pine;
- $20,000 in February 2017 to Bradley Farms—an entity then owned by Wilbur and Mike; and
- $20,000 in May 2017 to White Pine.

Although he did not provide a specific date, Galloway also alleged that the co-trustees had authorized a loan to Dan Holladay—Mike's former schoolmate—that Holladay never repaid, causing a $47,253.70 loss to the Trust.

Galloway also argued that the $24,000 annual trustee fees that co-trustees had withdrawn from the Trust from 2012 to 2018 were unreasonable in amount, lacked judicial approval, and violated the terms of the trust agreement and Kansas law. The trust agreement provides that the co-trustees should receive reasonable compensation for performing their duties as trustees, as a court determines:

> "Trustees are to act without Bond and to receive reasonable compensation for their services, based upon the nature of the trust, the extent of the responsibility and the usual work performed, the reasonableness of such compensation to be determined by a Judge of a Court of proper jurisdiction."

Galloway also argued that although the Trust gave the co-trustees discretion to pay beneficiaries from the trust corpus, the co-trustees had not done so, choosing instead to

5

distribute only minimal amounts from the trust income. He relied on the trust agreement provision stating:

> "The Trustees are hereby authorized, in their sole discretion to at such time or times as they shall determine to be to the benefit of the beneficiaries, pay and distribute the income and/or corpus of this trust estate or any part thereof, share and share alike to the beneficiaries herein named, in equal share and share alike."

In response, the co-trustees denied any wrongdoing.

Galloway later moved for summary judgment, asking the court to find as a matter of law that the co-trustees breached their fiduciary duties, violated the Uniform Trust Code (UTC), and engaged in self-dealing in violation of their responsibilities. Besides removing Wilbur and Mike as co-trustees, Galloway asked the court to order them to pay the Trust for any loss caused by their inappropriate loans, unreasonable fees, and other misconduct.

In response to Galloway's motion, the co-trustees conceded that they had made several loans, including those to Mike, White Pine, and Bradley Farms, but the loans were investments and each could be repaid in full "within a day's notice." As for the two loans to Holladay, Holladay had paid the first loan back in full plus 7% interest, but Holladay filed for bankruptcy in 2009 and did not repay his second loan. And although the co-trustees had recouped around $23,000 by contesting the bankruptcy claim, the Trust still suffered a loss.

Noting that none of the 13 other beneficiaries joined Galloway's suit, the co-trustees asserted that Galloway's reason for suing the Trust was merely an attempt to "bully and manipulate his family members in order to increase his own bank account." To support this claim, the co-trustees provided affidavits from beneficiaries to show that all

6

beneficiaries but Galloway agreed that the co-trustees had provided sufficient financial information, had made proper loans and investments, had collected reasonable compensation, and had not otherwise engaged in self-dealing or breached their financial duties.

*Summary Judgment Decision*

The district court held a hearing on the summary judgment motion. As for loans the co-trustees had made from trust funds, the co-trustees stated that they had repaid the Trust the day before the hearing for the Trust's loans to Mike, White Pine, and Bradley Farms. Still, the district court found that the co-trustees had made those loans without adequate security—although the promissory notes related to the White Pine and Bradley Farms loans showed that the loans were collateralized, neither loan included an "assignment, pledge, mortgage, UCC financing statements or other documents that would secure and perfect the interest for the trust." Similarly, Mike's mortgage had never been recorded because no one was willing to pay the recording fee. So the court held that "as a matter of law the co-trustees . . . caused loans to be made to themselves and their closely held corporations without adequate security." But because the co-trustees showed that they had repaid the loans, the district court found those issues moot.

As for Galloway's claim that the co-trustees had lost around $47,000 by improperly loaning trust funds to Holladay, the court found contested issues of fact.

As for trustees' fees, the district court found that it could not rule as a matter of law on the reasonableness of the amount of annual trustees' fees. So the district court ordered the co-trustees to return the fees they had paid themselves without court approval from 2012 to 2018, pending resolution of this claim at trial.

7

As for Galloway's claims of inadequate accounting, the district court found that the co-trustees had failed to provide the beneficiaries with appropriate accounting of the Trust and had thus violated the Uniform Trust Code and the Trust's accounting mandates. As a result, the district court ordered the co-trustees to get an independent audit before trial.

Finally, the district court denied the motion for summary judgment as to the issue regarding self-dealing. Because the Trust required only that trustees act in "good faith" and according to their "honest judgment," it found questions of fact for trial.

On October 29, 2019, before trial, the co-trustees offered to settle for $47,245.98—the amount of attorney fees and court costs Galloway had incurred to that point. Galloway denied that offer.

*Trial Proceedings*

At trial, Galloway testified on his own behalf. He also presented testimony from a Certified Public Accountant who discussed the Trust accounting and the loans made. And a Commerce Bank employee testified that Commerce Bank could manage the Trust for an estimated $15,000 per year, rather than the $24,000 annual fee the co-trustees had consistently taken. Galloway asked the district court to remove the co-trustees and replace them with Commerce Bank, to order the co-trustees to pay double damages for the loss incurred by the Holladay loan, and to award him attorney fees and costs. Galloway also argued that the co-trustees should repay the Trust for money they had spent on costs such as trustee and attorney fees.

Both co-trustees testified, giving a history of their extensive involvement in the oil and gas industry and in administering the Trust. They also presented testimony from other beneficiaries, including evidence that before her death, Galloway's mother had

8

intentionally removed Galloway as a named beneficiary to another trust started by O.E. for that side of his family. The co-trustees asked the district court to retain them as trustees and award them trustee fees and attorney fees incurred in defending Galloway's suit against the Trust.

After the parties made their closing arguments, the district court gave an oral ruling, questioning the loans the co-trustees had made to themselves but finding they had repaid most loans. Although Holladay never repaid his second loan, the co-trustees did not have to repay the Trust for that lost money and Holladay was not a close friend; thus, the loan to him did not breach the Trust. The testimony persuaded the district court that the co-trustees would not engage in similar self-interested actions in the future. And although Commerce Bank could manage the Trust for an estimated $15,000 per year, the $24,000 annual trustee fee was nonetheless reasonable. The court thus approved the co-trustees' $2,000 monthly compensation. So even though some of the co-trustees' actions were improper and potentially legally flawed, they did not merit removing Mike or Wilbur as trustees.

As for attorney fees, the district court split them, awarding some to the co-trustees and some to Galloway, all to be paid by the Trust. The district court limited Galloway's fees to the amount incurred before October 29, 2019—the date the co-trustees offered to settle. This was because it found no benefit to the beneficiaries from the trial. The court then reduced Galloway's attorney fees by the amount of the Trust's attorney fees incurred after October 29, 2019.

The district court's written order clarified that the co-trustees were to receive as compensation the amounts they had taken from 2012 to 2018. It granted the same $24,000 amount for 2019. But the district court ordered the co-trustees to obtain annual approval of any future trustee fees.

9

Galloway timely appeals.

## I.  DOES GALLOWAY HAVE STANDING TO SUE?

Before we address the issues the parties raise, we address the standing issue. Parties in a judicial action must have standing as part of the Kansas case-or-controversy requirement imposed by the judicial power clause of Article 3, § 1 of the Kansas Constitution. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 (2008) ("Article 3 of the Kansas Constitution . . . does not include the 'case' or 'controversy' language found in Article III, § 2 of the United States Constitution. Nevertheless, Kansas courts have repeatedly recognized that the 'judicial power' is the 'power to hear, consider and determine controversies between rival litigants.' *State, ex rel. Brewster v. Mohler*, 98 Kan. 465, 471, 158 P. 408 [1916], *aff'd* 248 U.S. 112, 39 S. Ct. 32, 63 L. Ed. 153 [1918]."). Standing is a jurisdictional question which determines whether a litigant has a right to have a court determine the merits of the issues presented. See *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 903, 249 P.3d 434 (2011). "[I]f a person does not have standing to challenge an action or to request a particular type of relief, then 'there is no justifiable case or controversy' and the suit must be dismissed." *Board of Sumner County Commissioners v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008) (quoting *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 [2000]).

The Kansas Uniform Trust Code (KUTC) speaks to this issue, limiting the individuals who may seek the removal of a trustee to the settlor, a co-trustee, a "qualified beneficiary," or the court. K.S.A. 58a-706(a), (b). A qualified beneficiary is a beneficiary who is eligible to receive mandatory or discretionary distributions of trust income or principal. K.S.A. 2020 Supp. 58a-103(12). A beneficiary is defined to include a person who "[h]as a present or future beneficial interest in a trust, vested or contingent." K.S.A.

10

2020 Supp. 58a-103(2). Applying these definitions, we find that Galloway is both a beneficiary and qualified beneficiary for the purposes of standing.

II.     DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING GALLOWAY'S REQUEST TO REMOVE WILBUR AND MIKE AS TRUSTEES?

Galloway asserts that we should apply a de novo standard of review in deciding every issue raised in this appeal. We disagree. Although our review of the nature, construction, and effect of the Trust is unlimited, *Godley v. Valley View State Bank*, 277 Kan. 736, 741, 89 P.3d 595 (2004), we review the district court's decision about removing trustees for an abuse of discretion.

K.S.A. 58a-706(b) states that a "court *may* remove a trustee" in some cases. (Emphasis added.) The statute does not, however, require removal. See K.S.A. 58a-706(b). Consistent with this statutory language, our court has consistently recognized that the decision to remove a trustee lies within the sound discretion of the district court. *Jennings v. Murdock*, 220 Kan. 182, 211, 553 P.2d 846 (1976); *Rodriguez-Tocker v. Estate of Tocker*, 35 Kan. App. 2d 15, 34-35, 129 P.3d 586 (2006). A district court abuses its discretion if its action stems from an error or law or fact or is otherwise arbitrary or unreasonable. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). As the party asserting error, Galloway bears the burden of showing the district court abused its discretion. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). We review the district court's findings of fact for substantial competent evidence. See *In re Hjersted Revocable Trust*, 35 Kan. App. 2d 799, 804, 135 P.3d 192 (2006).

Galloway does not argue that the district court based its decision on an error of law or fact. Instead, he simply argues that the district court's decision not to remove the co-trustees was unreasonable. So he must convince us that no reasonable person would agree with the district court's decision. See *Gannon*, 305 Kan. at 868 (party asserting

11

abuse carries burden of proof); see also *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011) (defining decisions made arbitrarily or unreasonably as those which no reasonable person could agree). But Galloway does not meet this burden. After carefully reviewing the district court's decision and the mitigating and aggravating facts presented by the parties, we find no abuse of discretion.

*Basic Legal Principles*

We begin by noting our decisional law that the removal of a trustee is a drastic action taken only when necessary to save trust property:

> "'[A] court will not "at the instance of interested parties, interfere with the performance of his duties by the trustee and the exercise of the discretionary powers conferred upon him, unless there is shown bad faith on his part, or a gross and arbitrary abuse of discretion."'"

> "The removal of a trustee is a drastic action which should only be taken when the estate is actually endangered and intervention is necessary to save trust property."

> "Where the instrument creating a trust gives the trustee discretion as to its execution, a court may not control its exercise merely upon a difference of opinion as to matters of policy, and is authorized to interfere only where the trustee acts in bad faith or its conduct is so arbitrary and unreasonable as to amount to practically the same thing." *Murdock,* 220 Kan. 182, Syl. ¶¶ 1, 12, 201.

See *Simpson v. Kansas Dept. of SRS*, 21 Kan. App. 2d 680, 688, 906 P.2d 174 (1995); Restatement (Third) of Trusts § 37, comment e (2003) ("[n]ot every breach of trust warrants removal of the trustee . . . , but serious or repeated misconduct . . . may justify removal").

12

The issues raised in this appeal are now controlled by the KUTC, K.S.A. 58a-101 et seq. The KUTC "is a substantial adoption of the Uniform Trust Code (UTC)." *In re Harris Testamentary Trust*, 275 Kan. 946, 950, 69 P.3d 1109 (2003). The primary intent of both the KUTC and the UTC "is to carry out the settlor's intent." *Godley*, 277 Kan. at 741 (citing English, *The Kansas Uniform Trust Code*, 51 U. Kan. L. Rev. 311, 328 [2003]).

The KUTC states the circumstances under which a district court may remove a trustee:

"(1) The trustee has committed a breach of trust;

"(2) lack of cooperation among co-trustees substantially impairs the administration of the trust;

"(3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries and is consistent with the terms of the trust; or

"(4) there has been a substantial change of circumstances and the court finds that removal of the trustee best serves the interests of all of the beneficiaries, is consistent with the terms of the trust, is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available." K.S.A. 58a-706(b).

Rather than citing one of these provisions, Galloway cites the entire statute, arguing that it allows removal when "the trustee has committed a breach of trust, impaired the administration of the trust and/or the court finds that removal of the trustee best serves the interest of all of the beneficiaries consistent with the terms of the trust." Galloway does not allege a substantial change of circumstances, triggering subsection (4). Yet his argument somewhat mirrors the language of subsections (1), (2), and (3) above. But the latter two subsections do not apply here.

13

K.S.A. 58a-706(b)(2) does not apply because "[s]ubsection (b)(2) deals only with lack of cooperation among cotrustees, not with friction between the trustee and beneficiaries." K.S.A. 58a-706, UTC Comments. The record does not show—nor does Galloway argue—that Mike and Wilbur did not cooperate with each other. And K.S.A. 58a-706(b)(3) does not apply because Galloway did not present evidence suggesting the co-trustees were unfit, unwilling, or otherwise persistently failed to administer the Trust effectively, as is necessary under this subsection. We thus limit our consideration of Galloway's claim to K.S.A. 58a-706(b)(1)—whether the co-trustees should have been removed because they breached the Trust.

*K.S.A. 58a-706(b)(1)*: *Breach of Trust*

Galloway argues that the co-trustees breached the terms of the Trust by:

- making inappropriate loans that amounted to self-dealing;
- failing to provide the beneficiaries with an annual accounting, and
- charging the Trust for unreasonable and unapproved trustee fees.

"A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." K.S.A. 58a-1001(a). If a breach occurs, a court may remedy the breach by, among other things, removing the trustee as provided in K.S.A. 58a-706. K.S.A. 58a-1001(b)(7).

The co-trustees' duties under our statutes and under the Trust agreement are clear. K.S.A. 58a-809 requires a trustee to take "reasonable steps to take control of and protect the trust property." K.S.A. 58a-810(a)-(b) requires that the trustee keep adequate records for the administration of the trust and keep the trust property separate from the trustee's own property. K.S.A. 58a-813(a) requires the trustee to keep the beneficiaries reasonably informed about the administration of the Trust and of material facts necessary for them to protect their interest in the Trust. The trust agreement also requires the co-trustees to keep

14

an account of the Trust, to give beneficiaries an annual accounting of the Trust transactions and income, and to get court approval before taking annual trustee fees. The record shows that the district court considered these requirements and the facts presented at trial before making its final decision.

The district court found that although the co-trustees may have breached their duties, it was unnecessary to remove them as trustees:

> "[W]ere there mistakes done by the trustees? Sure. There's things that they didn't do. [They] didn't come to the court and get court approval for the attorneys' fees. [They] didn't complete the security on the loans, which is something that is concerning. But does it warrant the removal of the trustees in this case? And my belief, considering the testimony . . . including the fact that this is a family trust and Mr. Wilbur Bradley has been the trustee for 51 years . . . I am not removing the trustees in this case."

Similarly, the district court's written order emphasized that this is a family trust, that Wilbur served as trustee for over 51 years, and that Mike served for 26 years. And "based on the authority and discretion provided" to it under the KUTC, the district court held that "the Trustees' conduct [did] not warrant their removal or replacement." Its conclusion reflects that courts may be less likely to remove a settlor-named trustee, such as Wilbur:

> "It has traditionally been more difficult to remove a trustee named by the settlor than a trustee named by the court, particularly if the settlor at the time of the appointment was aware of the trustee's failings. *See* Restatement (Third) of Trusts Section 37 cmt. f (Tentative Draft No. 2, approved 1999); Restatement (Second) of Trusts Section 107 cmt. f-g (1959). Because of the discretion normally granted to a trustee, the settlor's confidence in the judgment of the particular person whom the settlor selected to act as trustee is entitled to considerable weight." K.S.A. 58a-706, UTC Comment.

15

In considering Galloway's petition to remove the co-trustees, the court agreed that the co-trustees made loans to themselves, to their closely held companies, and to Holladay. But the district court stopped short of finding that the co-trustees had breached the Trust or had engaged in self-dealing. Instead, the district court recognized that the Trust provided the co-trustees with the discretion to make loans as investments to the Trust as long as they were "the best loan[s] to make," meaning they would "'yield the highest income consistent with safety.'" And the trust agreement permitted Wilbur and David, the original co-trustees, to make investments using "'their best judgment.'" Although David was no longer acting as a trustee when Wilbur authorized the loans at issue, the district court reasonably interpreted the Trust as nevertheless giving Wilbur wide discretion to make almost any investment decision, as long as he used his best judgment.

In contrast, the district court found that the co-trustees breached their duties by failing to adequately secure the loans, which may have avoided any loss. But because the co-trustees had repaid the money the Trust had loaned to Mike and to the trustee's companies before trial, those loans did not damage the Trust. As to the loan to Holladay that did cause a loss, the district court found that the loan was

> "a legitimate investment of Trust funds with a third party—not a breach of trust by the Trustees as alleged by Petitioner—and that Mike Bradley took reasonable steps to minimize the loss the Trust incurred by contesting Mr. Holladay's bankruptcy estate and clawing back over $23,000 for the trust."

The district court also considered the reasonableness of the trustee fees. Before trial, the district court had required the co-trustees to return the funds to the Trust pending its final decision because the co-trustees had never sought court approval of their fees. After trial, the court found the fees reasonable, returned the prior fees to them, and ordered them to get court approval before taking any future fees.

16

And finally, the district court considered the co-trustees' failure to provide the beneficiaries sufficient accounting information. The UTC stresses the duty to keep beneficiaries informed:

> "A particularly appropriate circumstance justifying removal of the trustee is a serious breach of the trustee's duty to keep the beneficiaries reasonably informed of the administration of the trust or to comply with a beneficiary's request for information as required by Section 813. Failure to comply with this duty may make it impossible for the beneficiaries to protect their interests. It may also mask more serious violations by the trustee." K.S.A. 58a-706, UTC Comment.

The district court's summary judgment ruling found that the co-trustees breached these fiduciary duties and the UTC. So the district court ordered the parties to complete an audit of the Trust accounting records before trial. But Galloway does not contend that the audit was not done or that it showed other irregularities or self-dealing.

The facts of record did not compel the district court to remove the co-trustees. Wilbur believed he did not have to give beneficiaries any accounting other than the information provided in the K-1 forms, or any information they had not specifically requested. He based that belief on the fact that his father, the settlor of the Trust, knew that Wilbur and David had given beneficiaries only the K-1 form for several years, yet he did not object. Once Galloway sued, the co-trustees began giving all beneficiaries a more detailed accounting of the Trust. And, when asked, the co-trustees provided Galloway with all the accounting information he requested.

This evidence fails to show that any breach of the Trust or other failing was done maliciously or in bad faith. Nor does the record show that the co-trustees' inadequate accounting was done to mask impropriety. See, e.g., *Roenne v. Miller*, 58 Kan. App. 2d 836, 840, 475 P.3d 708 (2020) (appellate record disclosed "clear pattern" of improperly

17

converting trust property which effectively emptied the trust assets). A decision to remove a trustee is "designed to protect the [Trust] rather than punish the [trustee]." *Rodriguez-Tocker*, 35 Kan. App. 2d at 35. Based on the evidence, a reasonable person could agree that removal of the co-trustees was unnecessary to protect the Trust.

As a final note, Galloway briefly argues that the co-trustees should have been removed because they failed to make distributions to the beneficiaries from the trust corpus. But Galloway raises this point only incidentally and does not support it with pertinent authority, so we consider it waived or abandoned. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Moreover, the trust agreement gave the co-trustees discretion to distribute the trust corpus as they deemed fit. As a panel of this court has held, a trustee of a discretionary trust cannot be removed for "actions designed to preserve the trust corpus for the other beneficiaries." *Simpson*, 21 Kan. App. 2d at 689-90. So even if it is not waived, that argument fails.

As another panel of this court recently explained, "[w]hen considering whether a district court decision is an abuse of discretion, we do not look to see whether any other decision would have been reasonable too. Our task is merely to ask whether a reasonable person could agree with the decision that the district court made." *State v. Tidwell*, No. 120,230, 2019 WL 3210427, at *2 (Kan. App. 2019) (unpublished opinion), *rev. denied* 312 Kan. 901 (2020). Because Galloway does not allege legal or factual error and a reasonable person could agree with the decision the district court made, we find no abuse of discretion in the decision not to remove the co-trustees.

III.     DID THE DISTRICT COURT ERR IN REFUSING TO ORDER DOUBLE DAMAGES?

Galloway next argues that the district court erred by refusing to assess double damages against the co-trustees under K.S.A. 58a-1002(a)(3) for the loss caused by the Trust's unrepaid loan to Holladay.

18

Galloway seemingly challenges the district court for not finding that Holladay enjoyed a close relationship with the co-trustees and the Bradley family. But Galloway did not object to the district court's factual findings in this regard.

> "[A] litigant must object to inadequate findings of fact and conclusions of law in order to give the trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. Where there has been no such objection, the trial court is presumed to have found all facts necessary to support the judgment." *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 706, 952 P.2d 1286 (1998).

We apply that presumption here.

### *Standard of Review*

When, as here, an appellant raises a claim for double damages under K.S.A. 58a-1002(a)(3), we review such claims de novo. See *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 308 Kan. 1040, 1045, 427 P.3d 9 (2018). Likewise, "determining the nature, construction, and legal effect of a trust is a question of law over which [this court has] unlimited review." *Godley*, 277 Kan. at 741. And to the extent that this issue requires statutory interpretation, our review is also unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

### *Analysis*

K.S.A. 58a-1002(a)(3) authorizes double damages for a breach of trust if a trustee embezzles or knowingly converts personal property of the Trust "to the trustee's own use." "'When one applies money or property left in his custody to a use which he desires to make of it, it is applied to his own use.'" *Bolton v. Souter*, 19 Kan. App. 2d 384, 387, 872 P.2d 758 (1993); see *State v. Pratt*, 114 Kan. 660, 666, 220 P. 505 (1923).

The double damages provision under K.S.A. 58a-1002(a)(3) is similar in nature and purpose to punitive damages. See *Alain Ellis Living Trust*, 308 Kan. at 1062. Punitive damages are not based on a theory that the plaintiff has a right to recover them but on the premise that the defendant deserves punishment for malicious, vindictive, or willfully and wantonly invasive conduct. The purpose of punitive damages is to restrain and deter others from committing similar conduct. *Adamson v. Bicknell*, 295 Kan. 879, 888, 287 P.3d 274 (2012).

The district court found that the loan to Holladay did not breach the Trust, so it did not order the co-trustees to pay for the loss caused by that loan. "Absent a breach of trust, a trustee is not liable to a beneficiary for a loss or depreciation in the value of trust property or for not having made a profit." K.S.A. 58a-1003(b).

Still, Galloway argues that Holladay was Mike's high school friend and a friend of the Bradley family, so the loan amounted to conversion of trust property for the co-trustees' own use. But Galloway did not present evidence to support that allegation. Instead, Mike and Wilbur testified that Holladay attended the same school as Mike and his sister but Holladay was not a friend and was given the loan in a legitimate business transaction. Contrary to Galloway's testimony that Holladay was Mike's "buddy," the district court found that Holladay was an "acquaintance" and nothing more. We cannot reweigh this evidence or make credibility determinations.

Nor does Galloway provide legal authority to support his claim that a loan made by the co-trustees to a friend would be an embezzlement or an improper conversion of trust funds as a matter of law. The Trust gave the co-trustees significant discretion over trust investments, and the Trust benefitted from their earlier loan to Holladay, which Holladay had repaid in full at seven percent interest. Galloway thus fails to show that the

20

district court erred in finding that the co-trustees' acts related to the Holladay loan did not warrant double damages under K.S.A. 58a-1002(a)(3).

IV.    DID THE DISTRICT COURT ABUSE ITS DISCRETION IN APPROVING THE CO-TRUSTEES' $24,000 ANNUAL FEES?

Galloway next argues that the district court erred in failing to forfeit the co-trustees' annual fees because of their mishandling of trust funds and their failure to keep the beneficiaries reasonably informed.

We review the district court's order approving $24,000 per year in co-trustees' fees for an abuse of discretion:

"Whether or not a trustee should receive reduced compensation or should forfeit his or her entire compensation for breach of trust lies within the sound discretion of the trial court and the action of the trial court will not be set aside unless it is arbitrary, capricious or unsupported by substantial evidence." *Burch v. Dodge*, 4 Kan. App. 2d 503, Syl. ¶ 7, 608 P.2d 1032 (1980).

The trust agreement does not set an amount of trustee fees. It requires only that the trustee fees be "reasonable . . . based upon the nature of the trust, the extent of the responsibility and the usual work performed." When, as here, the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation reasonable under the circumstances. K.S.A. 58a-708(a). The trust agreement does require court approval of trustee fees. This tracks K.S.A. 58a-105(b)(7), which provides that the terms of a trust do not prevail over a court's power to adjust unreasonably high or low trustee fees.

The district court found that $24,000 dollars a year—$1,000 per trustee per month—was reasonable compensation. We review the record to see whether this finding is supported by substantial competent evidence. The co-trustees testified that they

21

provided some expertise in handling of the Trust. Wilbur grew up in the oil and gas industry and later earned a bachelor's and master's degree in geological engineering. After college, Wilbur worked with Chevron and then became a consulting geologist. At one point, Wilbur worked for Union National Bank—which became Commerce Bank—as a consultant for their trust department. He later worked with his father and uncle, O.E. and E.L., until their deaths. He started White Pine and became a member of several oil and gas industry organizations. By the time of trial, in addition to his extensive background in this field, Wilbur had almost 52 years' experience managing the Trust.

Mike was raised in the oil and gas industry and began working with Wilbur in 1985 doing mainly field and land title work for the Trust. He managed the Trust for around 25 years. Both Mike and Wilbur provided significant assistance to attorneys who represented the Trust in a New Mexico case, which went to the United States Supreme Court. Wilbur estimated that both he and Mike worked an extra 15-20 hours per week on that case for at least three-and-a-half years without extra compensation. Had the Trust lost that case, it could have caused a $1 million loss to the Trust.

Although Galloway argued at trial that Commerce Bank would provide the same services as the co-trustees for less money, the trial court correctly noted that the test is not whether someone else could manage the Trust for less money but whether the $24,000 fees were reasonable. As support for the district court's reasonableness finding, Wilbur testified that based on his extensive work with Commerce Bank, he did not believe it could manage the Trust as effectively as he and Mike. He explained that the Bank consistently required assistance from outside consultants, implying that he and Mike managed the Trust on their own. And although Wilbur conceded that several of the trust interests were royalty interests—not working interests—and thus potentially required less labor to manage, he and Mike engaged in several trustee duties other than depositing royalty checks. Examples included working with the Oklahoma Corporation

22

Commission, considering and investing in various properties, and negotiating and entering into new oil and gas royalty interests.

Given this evidence, we find no abuse of discretion in the district court's decision finding the annual compensation of $12,000 a year per trustee reasonable.

V. DID THE DISTRICT COURT ABUSE ITS DISCRETION BY ITS ATTORNEY FEES AWARD?

Finally, Galloway contends that the district court committed reversible error by limiting his attorney fees and by permitting the co-trustees to pay their attorney fees from the Trust.

The district court's attorney fees order was creative. It ordered the Trust to pay Galloway's attorney fees incurred before a date certain, minus the Trust and co-trustees' attorney fees incurred after that date:

> "With regard to Petitioner's request that the Trust and/or the Trustees be ordered to pay Petitioner's attorney's fees and costs in this action and that the Trustees be ordered to reimburse the Trust for any attorney's fees and costs incurred by it in this action, as well as the Trust's request that Petitioner be ordered to pay its attorney's fees and costs in this action, the Court finds that this action did not have to proceed to trial, as the Trust's three alternative settlement offers to Petitioner on October 29, 2019 would have made Petitioner whole (offering to pay his attorney's fees through that date) after the Trustees had remedied any and all issues related to Petitioner's concerns about accounting and financial documentation provided to beneficiaries and loans made from Trust assets.
>
> "Accordingly, pursuant to the authority and discretion provided to the Court under K.S.A. § 58a-1004, the Court orders that the Trust must pay Petitioner's reasonable attorney's fees and costs incurred in this action through the end of October 29, 2019,

23

minus the amount of reasonable attorney's fees and costs incurred by the Trust and the Trustees in this action from October 30, 2019 to the present."

*Standard of Review*

In trust adjudication, a district court may award attorney fees to any party. See K.S.A. 58a-1004. When, as here, the district court is vested with the authority to grant attorney fees, we review the district court's decision under an abuse of discretion standard. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015). The district court has wide discretion to determine the amount and recipient of attorney fees. *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 203, 235 P.3d 515 (2010). "In the context of the abuse of discretion challenge mounted here, we assess whether no reasonable person would adopt the position taken by the district court." *Cresto v. Cresto*, 302 Kan. 820, 848, 358 P.3d 831 (2015) (citing *In re Estate of Somers*, 277 Kan. 761, 773, 89 P.3d 898 [2004]).

*Analysis*

"In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." K.S.A. 58a-1004. The district court did so here.

In trust adjudication, an award of attorney fees and expenses is considered to be reasonable if the litigation proved beneficial to the trust estate. See *Moore v. Adkins*, 2 Kan. App. 2d 139, 151, 576 P.2d 245 (1978). As a general rule, legal proceedings benefit a trust estate if questions are resolved so the estate can be properly administered. *In re Trusteeship of the Will of Daniels*, 247 Kan. 349, 357, 799 P.2d 479 (1990). When beneficiaries of a trust incur costs in an action that benefits the trust, beneficiaries can be

24

reimbursed for such costs out of trust funds. See *Murdock*, 220 Kan. at 215; *Moore*, 2 Kan. App. 2d at 151.

The district court followed that general rule, limiting Galloway's fees to the attorney fees he incurred before the co-trustees offered to settle. By cutting off Galloway's fees after that settlement offer, the district court's decision reflects its assessment that the litigation after the settlement offer did not benefit the trust estate.

The district court determined that Galloway's suit provided some benefit to the Trust and thus ordered the Trust to pay some of Galloway's attorney fees. Galloway's suit motivated the co-trustees to:

- swiftly repay the loans they had made from the Trust to Mike and the co-trustees' companies;
- give the beneficiaries an accounting of trust transactions and assets; and
- return their unapproved annual fees to the court, pending the court's determination of reasonableness.

So Galloway's suit incentivized the co-trustees to remedy past acts and to comply with the terms of the trust agreement going forward, benefitting all beneficiaries. It resolved important questions so the estate could be properly administered.

But Galloway did not succeed at trial on several substantial issues. The court refused to:

- order the co-trustees to pay double damages for the loss incurred by their second loan to Holladay;

- make the co-trustees repay the Trust for money they had spent on costs such as trustee and attorney fees; and
- remove the co-trustees from their positions.

Although the court could have ordered the Trust to pay all of Galloway's attorney fees, it reasonably found that Galloway's decision to reject the co-trustees' settlement and go to trial added no benefit to the Trust. We find no abuse of discretion in the district court's limiting the amount of Galloway's attorney fees to those he incurred before the co-trustees offered to settle.

Similarly, we find no abuse of discretion by the district court's reducing Galloway's fees by the amount the co-trustees incurred after the date they offered to settle. They were acting on behalf of the Trust, and they successfully defended the case at trial. The district court's attorney fee award reflected the degree of benefit the Trust received and was properly paid from the Trust. Its award essentially made Galloway pay the costs incurred after the offer was made because the judgment he finally got was not more favorable than the unaccepted offer, much like an offer to settle under Federal Rule of Civil Procedure 68(d). This kind of allocation encourages a petitioner to carefully consider the substance of the settlement offer before he accepts or rejects it, making the petitioner, whose inflated view of the value of his case is not shared by the finder of fact at trial, pay his own attorney fees. We cannot say that no reasonable person would adopt the position taken by the district court.

Affirmed.